698 So.2d 757 (1997)
George KELLY, et al., Plaintiff-Appellant,
v.
Harley M. OWENS, et al., Defendants-Appellees.
No. 29613-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1997.
*758 R. Scott Iles, Lafayette, for Appellant.
Casten & Pearce by Theodore J. Casten, Shreveport, for Appellees.
Before HIGHTOWER, BROWN and CARAWAY, JJ.
HIGHTOWER, Judge.
Plaintiff, George Kelly, appeals the granting of an exception of res judicata, after the trial court found that a settlement agreement discharged defendants, Harley Owens and State Farm, from any further liability to him. We affirm.

FACTS
On August 5, 1994, the plaintiff and his wife, respectively, the driver and passenger in a pickup truck, sustained injuries when Owens drove his 1983 Buick from a Shreveport parking lot to collide with their vehicle. State Farm Mutual Automobile Insurance Company ("State Farm") provided liability coverage for both automobiles and, also, uninsured/underinsured ("UM") protection to the Kellys.
On August 22, 1994, after earlier entering into a property damage settlement with the insurer, the Kellys signed a standard agreement expressly releasing Owens and State Farm

*759 from any and all claims, demands, damages, actions, causes of action, or suits of any kind or nature whatsoever, both to person and property, and particularly on account of all injuries known and unknown, sustained by George Kelly which have resulted or may in the future develop as a result of an accident which occurred on or about the 5th day of August, 1994, at or near 9300 Mansfield Road, Shreveport, La.
At that time, Kelly stated that he had been released from treatment by his physician and instructed to seek further care as needed. The contract provided for the payment of $2,509.86, including $1,000 as general damages along with lost wages and medical expenses to date.
Plaintiff's continued pain, however, eventually culminated in the surgical removal of two ribs and precipitated, on November 18, 1994, an amendment of the original release to reflect that up to the maximum amount of $5,000 would be paid for lost wages incurred within 180 days of the amendment, as well as medical expenses. The Kellys initialed the amendment and the insurer issued checks accordingly.
Still, on May 4, 1995, the Kellys instituted suit against Owens and State Farm. Plaintiff sought general damages, medical expenses, and loss of wages/earning capacity, while his wife similarly claimed loss of consortium.
Defendants filed an exception of res judicata, urging that the agreement and release settled all claims against them. Following a hearing, the trial court sustained the exception as to plaintiff but overruled it regarding Mrs. Kelly's claim.[1] This appeal ensued.

DISCUSSION
On appeal, plaintiff argues that not only should the trial court have invalidated the release agreement based upon mistake of fact concerning the extent of his injuries, his misunderstanding of the release purpose, the misrepresentations and undue advantage exercised by the claims adjuster, and the lack of signatures on the amended agreement, but also that State Farm remains liable in its UM capacity.
Of course, compromises are favored in the law, and the burden of proving the invalidity of such an agreement lies with the party attacking it. Fascio v. Lee, 94-1149 (La.App.2d Cir. 02/23/95), 650 So.2d 1236; Duet v. Lucky, 621 So.2d 168 (La.App. 4th Cir.1993). To ascertain intent, no reason exists to look beyond the four corners of an instrument absent some substantiating evidence of mistaken intent by the parties. Brown v. Drillers, 93-1019 (La.01/14/94), 630 So.2d 741.

Validity of Agreement and Release
Relying on Saunders v. New Orleans Public Service, Inc., 387 So.2d 603 (La.App. 4th Cir.1980), writ denied, 394 So.2d 614 (La.1980), appellant initially contends that he signed the compromise agreement under the "erroneous notion that [his] problems had substantially resolved," thus creating a mutual mistake of fact as to the principal cause of the compromise. The Saunders court, however, based its invalidation of the compromise on the parties' mutual error in believing that the plaintiff had undergone a proper physical examination, which, in fact, had not occurred. In the case sub judice, plaintiff received two physical examinations by his treating physician and visited an associate physician in that same office three times. X-rays had been made and conservative treatment pursued. In fact, two days after the settlement the doctor agreed that Kelly could return to work even with the pain plaintiff reported. Under these circumstances, the burden of demonstrating mutual error regarding the extent of injuries has not been sustained.
Nor are we impressed with the claim that the Kellys misunderstood the agreement due to the "undue advantage" exercised by the claims adjuster, and his misrepresentations of policy limits and the agreement. Both plaintiff and his wife graduated from high school and have considerable work experience, *760 yet they failed to read or ask questions regarding the agreement they signed and later initialed. Plaintiff acknowledged his understanding that "release" means to "let go," and that he received money for pain, lost wages, and medical expenses. The claims adjuster, David Fowler, testified that he discussed the agreement with the Kellys "from top to bottom" on August 22 without exerting any pressure to settle. Even so, inasmuch as plaintiff indicated a desire to return to work and that his physician had released him, Fowler felt the settlement to be appropriate. The couple admitted that no one forced them to sign the document. Under the demonstrated facts, then, any lack of understanding as to the nature of the agreement can be attributed only to the Kellys' neglect in eliciting further information, rather than to any misrepresentation or position of disadvantage.
Regarding the issue of policy limits, the record reflects conflicting versions of the information relayed to the Kellys. After considering the testimony, the trial court rejected appellant's contentions. Where such conflicts exist, the fact-finder's reasonable evaluations of credibility and inferences of fact should not be disturbed by the court of appeal. Rosell v. ESCO, 549 So.2d 840 (La. 1989).
Similarly, we are unpersuaded by appellant's argument concerning the lack of a signature. Each of the three participants testified that they signed the agreement and release document on August 22, and that later, when State Farm agreed to make weekly lost wage payments, they initialed the amendment which did not alter or reduce the benefits originally agreed upon. Thus, the evidence clearly reflects the necessary assent.

Release of Uninsured/Underinsured Carrier
Neither are we finally impressed with appellant's argument that the trial court erred in holding that the compromise also released State Farm in its capacity as UM carrier. Similar contentions have been rejected in Fascio, supra, and Duet, supra, although the issue remains res nova in this circuit.
In Fascio, supra, the defendant driver's liability insurer also provided UM protection to the plaintiffs, a married couple. After releasing GEICO from "any and every claim, demand, right or cause of action, of whatever kind or nature," the couple later named that insurer as defendant in its UM capacity. The appellate court affirmed the granting of GEICO's exception, relying on Duet, supra, which addressed the extent of a passenger's settlement with the host driver and his liability/UM insurer. The Fascio court found the release language "preclude[d] the possibility that the plaintiffs intended to release GEICO only in its capacity as liability insurer."
We agree with this rationale. By design, compromise agreements prevent or end lawsuits after the parties balance "the hope of gaining" against "the danger of losing." See La. C.C. art. 3071. The law thus not only contemplates careful consideration of the risk involved, but likewise expresses as a clear goal the elimination of litigation.
Applying those principles to the instant case, the express release of State Farm "from any and all claims, ... causes of action, or suits of any kind or nature whatsoever,... known and unknown," arising out of the accident, can be intended in no way other than as an agreement to cease all litigation against the insurer in any capacity. Consistent with the concept of compromise, the all-encompassing language addresses all avenues of litigation, which the law also holds plaintiff responsible to contemplate prior to entering such an agreement. Thus, we find the release to be a clear and unambiguous discharge of State Farm in both its liability and UM capacities. Both plaintiff and his wife admitted that they never expressed an intent to reserve their rights in the manner now claimed.

CONCLUSION
From the record before us, and in light of the favored status given to compromise agreements under the law, we find no manifest error in the district court's determination. Accordingly, the judgment below is affirmed at appellant's cost.
AFFIRMED.
BROWN, J., concurs in part, dissents in part.
*761 BROWN, Judge, concurring in part and dissenting in part.
I dissent from that part of the majority opinion holding that plaintiff's uninsured/underinsured motorist claim against State Farm was included in the agreement and release.
La. C.C. art. 3071 provides that a compromise is a written contract. The compromise instrument is the law between the parties and must be interpreted according to the parties' true intent. Brown v. Drillers, Inc., 93-1019 (La.01/14/94), 630 So.2d 741. A settlement extends only to the claims which the parties to the agreement intended to compromise. Cutrer v. Illinois Central Gulf Railroad Co., 581 So.2d 1013 (La.App. 1st Cir. 1991), writ denied, 588 So.2d 1120 (La.1991).
The supreme court has clearly held that:
The rule of (C.C.) article 2203 is contrary to the general well-settled precept that no one is presumed to have renounced his rights against others unless it clearly appears that he intended to do so. (Citations omitted) ...
Since full recovery is the goal of the (UM) legislation and because the tortfeasor and UM carrier are co-debtors in solido, we infer that a victim merely by his release of the tortfeasor does not forfeit any right against his UM carrier.
Carona v. State Farm Insurance Co., 458 So.2d 1275 (La.1984).
State Farm drafted the contract and did not include a UM release. State Farm, as Owens' insurer and as plaintiffs' UM insurer, wore two separate and distinct hats. The compromise expressly released Owens and his insurer. State Farm's claims representative, Mr. Fowler, testified that he did not include a UM release in the agreement because "... in fact, on that date, August 27th (date of release), the UM wasn't even an issue at that time."
The majority opinion requires plaintiff and his wife to have expressed an intent to reserve, rather than waive, their rights. This requirement is contrary to the principles of contracts and compromise.
NOTES
[1] Defendants did not appeal or answer the appeal; thus, the partial overruling of the exception is not before this court.