722 So.2d 1014 (1998)
Tina CHABAUD
v.
Dana SYLVESTER and State Farm Mutual Automobile Insurance Company.
No. 98-CA-330.
Court of Appeal of Louisiana, Fifth Circuit.
October 14, 1998.
*1015 Kirk J. Frosch, J. Douglas Sunseri, Nicaud & Sunseri, Metairie, La., for plaintiff/appellant.
Rene A. Curry, Jr., Guy C. Curry, New Orleans, La., for defendant/appellee.
THOMAS C. WICKER, Jr., Judge Pro Tem.
Tina Chabaud appeals a judgment which granted an exception of res judicata and dismissed her claim for uninsured/underinsured motorist (UM) insurance benefits against State Farm Mutual Automobile Insurance Company. We affirm.
At issue is whether Chabaud's settlement with State Farm as liability carrier for another party's vehicle applied to Chabaud's claims against State Farm under her UM coverage. Chabaud's claims arise out of an automobile collision between her truck and an automobile owned by Dana Sylvester, which was being driven by Leonard McNeil at the time of the accident. State Farm provided liability coverage for both vehicles and also provided UM coverage for Chabaud's vehicle. Chabaud filed suit against Sylvester and McNeil and against State Farm as insurer of Sylvester's vehicle. She also named as defendants the State of Louisiana, Department of Transportation and Development, and the Parish of Jefferson, Department of Traffic Engineering.
In August 1997 the plaintiff filed a Restricted Motion to Dismiss, reciting that her cause of action against State Farm, McNeil and Sylvester had been compromised and should be dismissed. The order attached to the motion was granted, dismissing the suit as to State Farm, McNeil, and Sylvester "with full prejudice," but with the plaintiff reserving "any and all rights" she might have "against any and all other parties" to the lawsuit.
Shortly thereafter the plaintiff filed a First Supplemental and Amending Petition, in which she named State Farm defendant in its capacity as her own UM carrier.
State Farm responded with an exception of res judicata, asserting that all claims stated in the First Supplemental and Amending Petition had been compromised and released by the plaintiff's release of State Farm with McNeil and Sylvester and her subsequent motion to dismiss them from the suit. State Farm contended the "clear, explicit and allencompassing" language of the release discharged State Farm not only as the defendant driver's liability insurer but also as plaintiff's UM carrier.
In opposition the plaintiff contended that since she had not sued State Farm under her UM coverage until after her settlement and release of State Farm, Sylvester and McNeil, the language of the release and dismissal documents could not be construed to refer to her UM claims.
The trial court granted the exception of res judicata, noting that the settlement document itself did not limit the release of State Farm: "It certainly does appear from the document, from the face, the four corners of the document that you intended to release State Farm for any and all claims arising from that accident, which would have included State Farm's capacity as UM carrier."
*1016 On appeal plaintiff assigns the following errors:
1. Whether the Trial Court erred in not [sic] finding that a suit against an insurance company in its capacity as UM is barred by virtue of a settlement with the same insurer in a different capacity.[1]
2. Whether the Trial Court erred in not finding that the release was ambiguous as to the capacity in which State Farm was released.
3. Whether a claim under a contract for UM coverage arises from the same transaction or occurrence as a claim for damages in tort.
4. Whether the Trial Court erred in not finding substantiating evidence that the releasor did not intend to release certain aspects of her claim.
5. Whether the Trial Court erred in failing to consider parol evidence to determine the true intent of the parties to the release.
6. Whether the Trial Court's dismissal of the UM claim violates the underlying public policy and purpose of the legislation creating UM coverage.
7. Whether the Trial Court erred in relying on Appellee's Characterization of the Pertinent Jurisprudence.
We pretermit specific discussion of these assignments because we have determined that plaintiff's UM claim arose out of the same transaction or occurrence as her tort claim and that her failure to reserve any rights against State Farm precluded any further action against the company.
In Carona v. State Farm Ins. Co., 458 So.2d 1275, 1279 (La.1984), our Supreme Court held that when an automobile accident victim settles with his tortfeasor his claim against his UM insurer is not discharged merely because he does not expressly reserve his right against the latter in accordance with Civil Code article 2203. That decision, however, involved situations in which the tortfeasors' insurers and the UM carriers were different companies and the decision turned on application of solidary liability principles under the uninsured motorist coverage law, La.R.S. 22:1406(D)(4).
In this appeal, however, the insurer is the same company, appearing as insurer of two different partiesthe tortfeasor (liability coverage) and the plaintiff (UM coverage) and the legal principle is not solidary liability but identity of the parties.
The release contains the following pertinent language:
RESTRICTED RECEIPT, RELEASE AND INDEMNITY AGREEMENT[2]
I, TINA M. CHABAUD, ... do hereby release and forever discharge STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DANA SYLVESTER, AND LEONARD D. MCNEIL... of and from any and all claims or demands of whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done by STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DANA SYLVESTER, and LEONARD D. MCNEIL, prior to and including the date hereof, and particularly on account of any and all claims which I have or may have for injuries, damage, loss or expenses, regardless of the kind or nature, as a result of the accident which occurred on or about October 23, 1996, while stopped in the turn lane of U.S. Highway 90 westbound turning south on Dakin Street in the Parish of Jefferson, State of Louisiana.
* * * * * *
THE AFORESAID payment is made without admitting to any liability, whatsoever, for the aforementioned accident***.
THE FOREGOING payment is also received in full compromise and settlement of any and all claims that I have or may have *1017 against the said STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, DANA SYLVESTER, AND LEONARD D. MCNEIL, ONLY, under the policy of insurance issued to Dana Sylvester, whether under the liability, medical payments or any other feature of said policy as a result of the aforesaid accident.
I further reserve any and all rights against any and all other parties to this litigation.
The judgment predicated on the release was made on a restricted motion to dismiss and states, in pertinent part:
[T]he above numbered and entitled cause be and the same is hereby dismissed as against STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, LEONARD D. McNEIL, and DANA SYLVESTER, ONLY, with full prejudice, as to all of plaintiff's rights herein ..., with plaintiff and cross-claimant reserving their rights against any and all other parties to the lawsuit.
"[A] compromise has the legal efficacy of a judgment, possessing `a force equal to the authority of things adjudged,' and `can not be attacked on account of any error in law or any lesion.' ... Based on LSA-C.C.Art. 3078, a valid compromise can form the basis of a plea of res judicata." Brown v. Drillers, Inc., 630 So.2d 741, 747 (La.1994).
The law concerning res judicata was changed by Acts 1990, No. 521, which redesignated La.Civ.Code art. 2286 as La.R.S. 13:4231 and changed its wording. La.R.S. 13:4231 now provides in pertinent part:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
* * * * * *
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action. [Emphasis added.]
The Comments following La.R.S. 13:4231 make relevant interpretations of the changes, noting that R.S. 13:4231 makes a substantial change in the law and the new statute is directed toward implementing the purpose of res judicata, which is "to foster judicial efficiency and also to protect the defendant from multiple lawsuits." La.R.S. 13:4231, Comments1990, (a).
The central inquiry is not whether the second action is based on the same cause or cause of action (a concept which is difficult to define) but whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action. This serves the purpose of judicial economy and fairness by requiring the plaintiff to seek all relief and to assert all rights which arise out of the same transaction or occurrence.
La.R.S. 13:4231, Comments1990, (a).
[T]he basic principle underlying the doctrine of res judicata [is] that a plaintiff must assert all of his rights and claim all of his remedies arising out of the transaction or occurrence. Claims that arise or which he becomes aware of before trial, may be asserted through an amended or supplemental petition, and these claims will relate back to the time of the original filing if they arise out of the transaction or occurrence set forth in the original petition.... Alternatively, he may seek a reservation in the judgment of the right to bring another action.... A cause of action which arose after the rendition of the final judgment could not have been asserted earlier and would not be precluded by the judgment.
La.R.S. 13:4231, Comment1990, (e).
La.R.S. 13:4232 sets out the following pertinent exceptions to the general rule of res judicata:
A. A judgment does not bar another action by the plaintiff:
(1) When exceptional circumstances justify relief from the res judicata effect of the judgment;
(2) When the judgment dismissed the first action without prejudice; or,

*1018 (3) When the judgment reserved the right of the plaintiff to bring another action.
The plaintiff asserts the original petition named State Farm defendant only as insurer of Dana Sylvester and her settlement mentioned State Farm only in its capacity as Sylvester's carrier. Therefore, she contends, State Farm was never in the suit in its capacity as her UM carrier and the release could not have been intended to settle a claim against State Farm as UM carrier.
This circuit has held that identity of parties does not mean the parties must be the same physical or material parties, but they must appear in the suit in the same quality or capacity. Middleton v. Parish of Jefferson, 97-324 (La.App. 5 Cir. 1/14/98), 707 So.2d 454, writ denied, 98-0403 (La.3/27/98), 716 So.2d 896; Morris v. Haas, 95-75 (La. App. 5 Cir. 5/30/95), 659 So.2d 804, 810, writ denied, 95-2519, 95-2545 (La.12/15/95), 664 So.2d 441 (two cases). We have not yet ruled, however, on how that principle applies to an insurance company which insures opposing parties involved in a single lawsuit.
Other circuits have dealt with this issue by finding that a broad release of the insurer applies equally to the insurer as liability carrier and as UM carrier: Kelly v. Owens, 29,613 (La.App. 2 Cir. 8/20/97), 698 So.2d 757, writ denied, 97-2311 (La.12/12/97), 704 So.2d 1193; Fascio v. Lee, 94-1149 (La.App. 4 Cir. 2/23/95), 650 So.2d 1236; Duet v. Lucky, 621 So.2d 168 (La.App. 4 Cir.1993).
In Duet, as in this case, State Farm had a dual capacity as both liability and UM insurer. The Fourth Circuit found that the plaintiff's release of State Farm was all-encompassing:
The language of the release evidences the intent to release both Servat and State Farm from "any and all claims ... known and unknown ... on account of all injuries... from an accident which occurred on or about the 2nd day of July, [19]89 at or near High Rise on I-10." This settlement agreement, on its own, effectively precludes the possibility that the plaintiff intended to release State Farm only in its capacity as Servat's liability insurer.
Duet v. Lucky, 621 So.2d 168,171 (La.App. 4 Cir.1993). Further, the court found no reason to "look beyond the four corners of the document to ascertain intent," not only because the language of the release was clear and unambiguous, but also because the party seeking to raise the issue of intent was Allstate, the insured's subrogee, which was not a party to the compromise agreement. 621 So.2d at 172.
In Fascio, the plaintiffs executed full releases of GEICO, which was the liability and UM carrier, and dismissed all claims against GEICO. The Fourth Circuit relied on its earlier decision in Duet, supra, pointing out,
[T]he evidence unequivocally demonstrates that the Fascios executed an agreement compromising all claims against GEICO and Segue and releasing them from liability.
* * * * * *
The language of the above-quoted release clearly evidences an intent to release GEICO and Segue from "any and all claims," "of any kind or nature whatsoever," "known and unknown," arising out of the accident. Like Duet, the settlement agreement expressly precludes the possibility that the plaintiffs intended to release GEICO only in its capacity as liability insurer.
Fascio v. Lee, 650 So.2d at 1238.
In Kelly, as in the case before us, State Farm provided both liability coverage for the tortfeasor and UM insurance for the plaintiffs. The plaintiffs signed a standard agreement expressly releasing both the tortfeasor and State Farm, which contained the same broad language as the agreement in this case. Later one of the plaintiffs discovered his injuries were worse than he thought when he signed the release and he attempted to recover from State Farm under the UM provisions. The Second Circuit held:
The Fascio court found the release language "preclude[d] the possibility that the plaintiffs intended to release GEICO only in its capacity as liability insurer."
We agree with this rationale. By design, compromise agreements prevent or end lawsuits after the parties balance "the *1019 hope of gaining" against "the danger of losing." See La.C.C. art. 3071. The law thus not only contemplates careful consideration of the risk involved, but likewise expresses as a clear goal the elimination of litigation.
Applying those principles to the instant case, the express release of State Farm "from any and all claims, ... causes of action, or suits of any kind or nature whatsoever,... known and unknown," arising out of the accident, can be intended in no way other than as an agreement to cease all litigation against the insurer in any capacity. Consistent with the concept of compromise, the all-encompassing language addresses all avenues of litigation, which the law also holds plaintiff responsible to contemplate prior to entering such an agreement. Thus, we find the release to be a clear and unambiguous discharge of State Farm in both its liability and UM capacities. Both plaintiff and his wife admitted that they never expressed an intent to reserve their rights in the manner now claimed.
Kelly v. Owens, 698 So.2d at 760.
We see no reason to diverge from these principles. The language of La.R.S. 13:4231-4232 makes clear the law's intent that parties wishing to limit the effect of a judgment must either make a dismissal without prejudice or reserve their right to bring another action. La.R.S. 13:4232(A)(2)-(3). Otherwise, a judgment extinguishes "all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation." La.R.S. 13:4231(2). Clearly, both plaintiff's claim in tort against State Farm as Sylvester's liability insurer and her claim against State Farm as her own UM insurer arose from the same occurrence, to wit, the automobile accident of October 23, 1996 between her vehicle and Sylvester's vehicle.
The plaintiff urges us to find the release ambiguous and to consider parol evidence that she did not intend to release her UM claim. On the record before us, however, there is no reason to go beyond the "four corners" of the release and the judgment. Nothing in either document either limits its scope or reserves further rights against State Farm.
For the foregoing reasons, therefore, the judgment is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.
CANNELLA, J., dissents.
CANNELLA, J., dissenting.
The language of the release is all encompassing and seems to include future claims, such as the UM claim in this case. However, an inquiry outside of the four corners of the compromise agreement is required if there is evidence that the intent did not include the disputed claim. In Brown v. Drillers, Inc., 630 So.2d 741, 748-750 (La.1994), the court stated:
The meaning and intent of the parties to a written instrument, including a compromise, is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument. Maltby v. Gauthier, 526 So.2d 455, 457 (La.App. 5th Cir.), writ denied, 531 So.2d 474 (La.1988); Smith v. Leger, 439 So.2d 1203 (La.App. 1st Cir. 1983)... Louisiana courts, however, have crafted a special exception to the extrinsic evidence rule for compromise agreements based on an in pari materia reading of LSA-C.C.Art. 3073's provision that a compromise extends only to those differences the parties' clearly comprehended and LSA-C.C.Art. 3079's provision that an error as to the subject matter in dispute is a ground to rescind a compromise. Moak v. American Automobile Ins. Co., 242 La. 160, 134 So.2d 911 (1961)...

Moak, supra stands for the proposition that when a dispute arises as to the scope of a compromise agreement, extrinsic evidence can be considered to determine exactly what differences the parties intended to settle. Following Moak, a long line of jurisprudence holds that a general release will not necessarily bar recovery for those aspects of a claim not intended by the parties to be covered by the release. Under that jurisprudential rule, the parties to *1020 a release instrument are permitted to raise a factual issue as to whether unequivocal language in the instrument was intended to be unequivocal.
Louisiana courts, however, have tempered that jurisprudential rule, recognizing that absent some substantiating evidence of mistaken intent, no reason exists to look beyond the four corners of the instrument to ascertain intent. Duet v. Lucky, 621 So.2d 168, 173 (La.App. 4th Cir.1993). Utilizing a case-by-case, factual analysis, Louisiana courts have limited the rule's application to cases in which substantiating evidence is presented establishing either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. Higgins v. Spencer, 531 So.2d 768, 772 (La.App. 1st Cir.), writ denied, 532 So.2d 106 (La.1988). When the factual circumstances surrounding the execution of the release instrument do not fall within either of the above categories, Louisiana courts, applying LSA-C.C. Art.2046's general rule of construction, have not hesitated to confine their analysis to the four corners of the instrument... When, as in that instance, a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and thus summary judgment is appropriate. Wilson v. Cost + Plus of Vivian, Inc., 375 [93-1019 La. 10] So.2d 683, 685 (La.App.2d Cir.1979); Horton v. Mobley, 578 So.2d 977, 982 (La.App. 2d Cir.1991).
In this case, the letter by plaintiff makes an offer to settle for the policy limits of the tortfeasor, Ms. Sylvester. There is no mention in any document or pleading about State Farm's relationship to plaintiff as its UM, insurer, until the suit is filed one month after the settlement. The settlement agreement contains a paragraph that specifies that the compromise relates to State Farm as the insurer of Ms. Sylvester, although the first paragraph contains broad release language. The Restricted Motion to Dismiss relates the release to State Farm, Leonard McNeil and Dana Sylvester "ONLY." These factors are sufficient to trigger an inquiry into intent, per Brown v. Drillers, Inc. Thus, I would remand the case for that purpose.
NOTES
[1] We have inserted the "sic" notation because the appellant's statement of the issue is confusing. In fact the trial court did find "that a suit against an insurance company in its capacity as UM is barred by virtue of a settlement with the same insurer in a different capacity."
[2] State Farm asserts the term "restricted" in the document's title refers to the release's last-quoted clause, which excludes claims against other defendants in the suit (the State of Louisiana, Department of Transportation and Development, and the Parish of Jefferson, Department of Traffic Engineering).