742 So.2d 655 (1999)
Marzell Ike DUMAS, et al., Plaintiffs-Appellants,
v.
ANGUS CHEMICAL COMPANY, IMC Fertilizer, et al., Defendants-Appellees.
Nos. 31,969-CW, 32,011-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1999.
*657 Dennis Hennen, Monroe, Counsel for Plaintiffs-Appellants.
Hudson, Potts & Bernstein by Ben R. Hanchey, and J.P. Christiansen, Monroe, Davenport, Files & Kelly by Thomas W. Davenport and Shane Craighead, Monroe, Rabalais, Hanna & Hebert by Patrick J. Hanna, Lafayette, Lugenbuhl, Burke, Wheaton, Peck, Rankin & Hubbard by Claude F. Bosworth, New Orleans, Bickel & Brewer by Michael J. Collins and Elizabeth *658 Handschuch, Cook, Yancey, King & Galloway by Samuel Caverlee and Lee Ayers, Shreveport, Counsel for Defendants-Appellees.
Before NORRIS, C.J., and STEWART and DREW, JJ.
NORRIS, Chief Judge.
This is a class action suit arising from an industrial plant explosion. The defendants, Angus Chemical Company and IMC Fertilizer, moved for summary judgment to dismiss the claims of claimants who had executed a "release of all claims and assignment" in the months after the accident. The affected claimants, represented by the Plaintiffs' Steering Committee ("PSC"), opposed the motion. After four days of hearings, the District Court rendered judgment which granted, in whole or in part, or denied summary judgment as to 209 individual claims. The PSC has appealed, generally contesting the dismissal, in whole or part, of any claimant's claim. The defendants have sought supervisory review contesting the denial, in whole or part, of summary judgment with respect to 54 claimants. For the reasons expressed, we amend, affirm and clarify.

Procedural background
The case has been before the court on several prior occasions. Angus owned, and IMC operated, a nitroparaffins plant in Sterlington, Louisiana, in northern Ouachita Parish. On May 1, 1991 the plant exploded with the force of 12,000 pounds of TNT, killing eight IMC employees and causing bodily injury and property damage outside the plant. Angus promptly retained an adjusting firm, GAB, to identify and compensate claimants. A general contractor, Breck Construction Company, was hired to repair damaged homes and businesses, and accounts were opened at local hospitals and auto dealers so affected persons might obtain medical services and rental cars at no out-of-pocket cost to them.
Through GAB, Angus settled numerous claims and secured releases from over 200 claimants, each of whom signed a "RELEASE OF ALL CLAIMS AND ASSIGNMENT" (hereinafter, "release"), which acknowledged the receipt of cash paid to the claimant. The release further provides:
I/we, for myself/ourselves, my/our heirs, executors, administrators and assigns, release, acquit and forever discharge ANGUS CHEMICAL COMPANY and IMC FERTILIZER, INC., their parent companies, former owners, predecessor companies, stockholders, subsidiaries, related companies, and any other affiliates, their officers, directors, employees, agents, representatives, and their insurers and any and all other persons, firms and corporations for whom they may be responsible, of and from any and all actions, causes of action, claims or demands for damages, costs, losses, expenses, compensation, consequential damage or any other thing, known or unknown, whatsoever on account of, or in any way growing out of or resulting from a fire, explosion or chemical emission that happened on or about the 1st day of May, 1991, at or near Sterlington, Louisiana.
I/we hereby reserve all rights against parties not released hereunder and further assign and subrogate all of these reserved rights and all my/our other rights to ANGUS CHEMICAL COMPANY and IMC FERTILIZER, INC. against all other parties, and agree that ANGUS CHEMICAL COMPANY and IMC FERTILIZER, INC. may institute suit in my/our names and agree that I/we shall do all things necessary to secure the rights of ANGUS CHEMICAL COMPANY and IMC FERTILIZER, INC. hereunder.
I/we hereby acknowledge and assume all risk, change [sic; should be "chance"] or hazard that the said injuries or damage may be or become permanent, progressive, greater, or more extensive than is now known, anticipated or expected. No promise or inducement which is not herein expressed has been made to me/us, and in executing this *659 release I/we do not rely on any statement or representation made by ANGUS CHEMICAL COMPANY or IMC FERTILIZER, INC. or any person, firm or corporation, hereby released, or any agent, physician, doctor or any other person representing them or any of them, concerning the nature, extent or duration of said damages or losses or the legal liability therefor. * * *
This release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this release are contractual and not a mere recital.
I/we further state and I/we have carefully read the foregoing release and know the contents thereof, and I/we sign the same as my/our own free act.
Numerous persons filed lawsuits, which this court certified as a class action.[1] In the ensuing litigation, the District Court has granted several motions for summary judgment, rejecting various plaintiffs' claims and dismissing certain defendants.[2]
In May 1996 Angus filed the instant motion for summary judgment, asserting that 156 plaintiffs submitting proof of claim forms had signed the release. Angus later supplemented this motion to include additional plaintiffs, a total of 227. In support Angus filed the releases and, inter alia, portions of the class certification which, according to Angus, did not authorize double recovery for any claimant who had already settled. Several other defendants joined Angus's motion in extenso.[3]
The PSC opposed the motion. It attached affidavits from nearly all of the affected plaintiffs.[4] The affidavit was a computer-generated standard form listing 18 check-off options and space to write further comments. Representative entries from the list are as follows:
2. The money I received was for property damage only.
5. That at no time did I discuss with any insurance adjuster an intent to settle my personal injury claim.
11. It was never my intent to settle any personal injury claims or any claims now being made with the insurance company.
12. The adjuster did not tell me that any claims for personal injuries were being settled, nor did the adjuster ever express any intent that the insurance company was attempting to settle all claims arising from the accident of May 1, 1991.
13. To the extent the adjuster paid sums and obtained a document now being claimed as a full release, then it is my opinion that the adjuster knowingly attempted to deceive the true intent of the payment by the insurance company as well as the signing of any documents.
The PSC attached proof of claim forms and depositions from those claimants who had been deposed. Also filed were various documents obtained from Angus and other defendants through discoverycopies of checks, GAB tracking sheets, copies of bills and receiptswhich, according to the *660 PSC, showed that settlement checks corresponded exactly to the property damage claimed. The PSC also filed the deposition of GAB's adjustor supervisor, Keith LeBlanc.
As noted, the District Court conducted four days of hearings in February and March 1998, in which the summary judgment evidence was offered as to each claim. In August, the court rendered judgment as follows:
Category 1121 claimants signed complete releases; summary judgment was granted dismissing their claims in toto.

Category 250 claimants released only their property and lost wage claims (chiefly "inside the gate employees"); summary judgment was granted dismissing these claims, but denied with respect to their personal injury claims.
Category 320 claimants released their own claims, but not those of their minor children; summary judgment was granted as to the claimants but not their children.
Category 415 claimants may not have executed valid releases; because genuine issues of material fact remained, summary judgment was denied with respect to these.
Miscellaneous3 claimants added special provisions to their releases; partial summary judgment was granted as to them.
The PSC appealed, urging the District Court erred in (1) summarily dismissing "these claims of class members"; (2) dismissing the claims for "property damage and/or lost wages" in Category 2; (3) failing to include two particular claimants in Category 2; and (4) dismissing the claims against all defendants, when it should have reserved these claimants' rights against all parties besides Angus and IMC.
Angus applied for writs, contesting (1) the partial denial of summary judgment as to 44 members of Category 2 and (2) the complete denial of summary judgment as to 10 claimants.[5] The appeal and writ application were consolidated for purposes of appeal.
Two additional defendants, Glitsch Inc. and Mid South Fire Protection, filed briefs arguing that the releases in favor of Angus and IMC, and signed by the claimants, also released the plaintiffs' claims as to Glitsch and Mid South. They seek affirmance.

Applicable law
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing. La. C.C. art. 3071. A release executed in exchange for consideration is a compromise. Brown v. Drillers Inc., 93-1019 (La.1/14/94), 630 So.2d 741. A compromise regulates only the differences which appear clearly to be comprehended therein by the intention of the parties, "whether it be explained in a general or particular manner," and does not extend to differences which the parties never intended to include. La. C.C. art. 3073; Ortego v. State, 96-1322 (La.2/25/97), 689 So.2d 1358. A compromise therefore carries the authority of things adjudged, and cannot be attacked for error of law or lesion. La. C.C. art. 3078. Public policy favors compromise agreements and the finality of settlements. Brown v. Drillers Inc., supra at 757; Rivett v. State Farm Fire & Cas. Co., 508 So.2d 1356 (La.1987).
A compromise may be rescinded whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded where there exists fraud or violence. La. C.C. art. 3079. *661 However, there is no ground for rescission when a claimant subsequently discovers or decides that his or her injury is more serious than initially believed. Kelly v. Owens, 29,613 (La.App. 2 Cir. 8/20/97), 698 So.2d 757, writ denied 97-2311 (La.12/12/97), 704 So.2d 1193; Robbert v. Carroll, 97-0854 (La.App. 4 Cir. 9/10/97), 699 So.2d 1103, writ denied 97-2507 (La.12/19/97), 706 So.2d 456.
The parties' intent in executing a compromise is normally discerned from the four corners of the document; extrinsic evidence is normally inadmissible to explain, expand or contradict the terms of the instrument. Brown v. Drillers Inc., supra. Nevertheless, when the parties to a compromise dispute its scope, they are permitted to raise factual issues regarding whether the unequivocal language of the instrument was intended to be truly unequivocal. Id. However, such latitude is granted only in the presence of some "substantiating evidence" of mistaken intent. Duet v. Lucky, 621 So.2d 168 (La.App. 4 Cir.1993). In Brown v. Drillers Inc., supra, the Supreme Court held that "substantiating evidence" must establish:
either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. 630 So.2d at 749.
In the absence of such evidence, the compromise is subject to the normal rules of contract analysis and enforced precisely as written. Duet v. Lucky, supra; Brown v. Drillers Inc., supra, fn. 12. Lack of intent for a compromise to be truly final may be inferred when the parties continue to engage in negotiations or make and accept payments arising from the matter in dispute. See, Moak v. American Auto. Ins. Co., 242 La. 160, 134 So.2d 911 (1961); Cutrer v. Illinois Cent. Gulf R. Co., 581 So.2d 1013 (La.App. 1 Cir.), writ denied 588 So.2d 1120 (1991). A compromise that releases all claims is not ambiguous simply because it is broad. Duet v. Lucky, supra; Fascio v. Lee, 94-1149 (La.App. 4 Cir. 2/23/95), 650 So.2d 1236; Smith v. Frey, 97-0987 (La.App. 4 Cir. 11/19/97), 703 So.2d 751.
The preclusive effect of a compromise may be raised by motion for summary judgment. R.G. Claitor's Realty v. Juban, 391 So.2d 394 (La.1980) (on rehearing). Summary judgment procedure is designed to secure the just, speedy and inexpensive determination of every action, except those disallowed by law; the procedure is favored and must be construed to accomplish these ends. La. C.C.P. art. 966 A(2). After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted. La. C.C.P. art. 966 C(1).
Summary judgment evidence consists of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which are offered to show there is no genuine issue of material fact. La. C.C.P. art. 966 B. Supporting and opposing affidavits must be made on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein. La. C.C.P. art. 967. Ultimate or conclusory facts and conclusions of law cannot be utilized on the motion for summary judgment. Thompson v. South Central Bell Tel. Co., 411 So.2d 26 (La. 1982). Specific facts must be alleged. Baker v. Maclay Properties Co., 94-1529 (La.1/17/95), 648 So.2d 888. Affidavits that are devoid of specific underlying facts to support a conclusion of ultimate "fact" are not legally sufficient to defeat summary judgment. Dumas v. Angus Chemical Co., supra, 31,400 at p. 17, 728 So.2d at 452, and citations therein.
The mover bears the burden of proof in the motion for summary judgment. *662 La. C.C.P. art. 966 C(2). Recent amendments to art. 966 were intended to bring our procedure more closely into line with the Federal standard and abrogate judicial antipathy toward the motion. Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied 97-0281 (La.3/14/97), 690 So.2d 41.[6] Appellate review of summary judgments is de novo, utilizing the same criteria as the District Court. Guillory v. Interstate Gas Station, 94-1767 (La.3/30/95), 653 So.2d 1152; Steed v. St. Paul's United Methodist Church, 31,521 (La.App. 2 Cir. 2/24/99), 728 So.2d 931, writ denied 99-0877 (La.5/7/99), 740 So.2d 1290.

Discussion: Summary judgment evidence
By its fourth assignment Angus urges the District Court erred in considering affidavits filed by the claimants in response to the motion for summary judgment. Angus contends that the "cookie cutter form," on which each affiant checked his preferred options, advanced only conclusory factual allegations and conclusions of law, and thus cannot be considered in opposing the motion. Thompson v. South Central Bell Tel. Co., supra. Angus adds that a similar affidavit, "replete with standard phrases" and used by the PSC in connection with loss of consortium claims, was held insufficient to create a genuine issue of material fact. Dumas v. Angus Chemical Co., supra, 31,400 at p. 17, 728 So.2d at 452. Angus further argues, without elaboration, that many of the PSC's other filingsadjustors' notes and portions of GAB's files were inadmissible because they were not verified.
We note at the outset that several affidavits were not signed by the claimants; these are patently inadmissible as summary judgment evidence. La. C.C.P. art. 967. Further, many affidavits contain only checked-off menu options, signed by the claimant. The menu options lack specific facts and thus do not serve to create a genuine issue of material fact. Dumas v. Angus Chemical Co., supra. However, several affidavits contain handwritten notations under Option 19, "Exactly what happened to me was the following." These addenda, if factual, may be considered on the motion. Moreover, many claimants filed depositions which are obviously admissible on the motion. We have considered these individually, together with the factual aspects of the affidavits.
As for the GAB files, the documents attached to affidavits on the motion for summary judgment must be "sworn or certified." La. C.C.P. art. 967. The PSC submitted the deposition of Keith LeBlanc, GAB's supervisor for the Sterlington explosion. He described the adjustment process in detail, stating that the activity log "should be all the activities done by the adjuster or anyone else touching the file." Dep., 19. While this is not precisely certification of the GAB files, it is sworn testimony by a witness with knowledge that the matter is what it is claimed to be. La. C.E. art. 901 B(1). Under the circumstancesnotably that Angus produced these files in discoverywe find that Mr. LeBlanc's indirect certification is acceptable. See, e.g., First Nat'l Bank of Commerce v. Houston, 605 So.2d 1 (La.App. 2 Cir.1992).
For these reasons, the court will consider the properly executed affidavits and the GAB files, to the extent that they raise factual issues, together with the depositions and releases, in ruling on the motion for summary judgment.

Validity and scope of the releases
By its first assignment the PSC urges the District Court erred in summarily dismissing *663 "these claims of class members" despite genuine issues of material fact as to the intent of the parties and the scope of the releases. The thrust of the argument is that no summary judgment was proper. By its third assignment Angus urges that the language of the releases is clear, unequivocal, and bars all the instant claims.
The threshold issue is the validity of the release. A compromise may be phrased in "a general or particular manner." La. C.C. art. 3073. The release used herein "release[s], acquit[s] and forever discharge[s]" Angus, IMC and others from "any and all actions, causes of action, claims or demands for damages, costs, losses, expenses, compensation, consequential damage or any other thing, known or unknown, whatsoever" arising from the explosion and fire. This language is comprehensive and similar to that found sufficient in Smith v. Frey, supra, and Duet v. Lucky, supra, to effectuate a valid "all claims" release.
Moreover, there is no basis to rescind the compromises on the statutory grounds of art. 3079. Error in the person, error in the matter in dispute, and violence are not alleged. The PSC raises the general contention that some claimants were "deceived," but this is not substantiated. It contradicts the unequivocal text ("I/we have carefully read the foregoing release") and the admonition that appears directly above the signature line: "CAUTION! READ BEFORE SIGNING." To nullify the release on the instant showing would deprecate the favored status of compromises in the law. Brown v. Drillers Inc., supra. We therefore find that the instant releases are valid agreements between the parties.
Even a valid compromise, however, may be limited in scope to the issues or damages clearly delineated therein; if so, it does not apply to other issues. Brown v. Drillers, supra. The PSC has vigorously argued that the instant releases may be limited in scope and thus do not, as a matter of law, bar all these claims. In support, it cites Brown v. Drillers Inc., supra, and E.M. Nominee Partnership Co. v. Arkla Energy Resources, 26,795 (La. App. 2 Cir. 5/12/95), 656 So.2d 55, 133 Oil & Gas Rep. 454, writ denied 95-1792 (La.1/5/96), 666 So.2d 300. Angus argues that these cases are distinguishable and do not support limiting the scope of the compromises.
Both Brown and E.M. Nominee allowed plaintiffs to sue for damages despite compromise agreements which appeared to bar all further claims against the defendants. In Brown, an oilfield worker originally filed a tort suit against the owner and various insurers for injuries sustained in a fall from an oil rig. He and his wife then settled the suit for approximately one million dollars, releasing the defendants from "any and all claims, demands, causes or rights of action or suits at law or in equity of whatsoever kind or nature." Five years after the compromise, however, Mr. Brown died, "at least in part" because of injuries sustained in the fall. Mrs. Brown then filed a suit for wrongful death against the same defendants, who filed a motion for summary judgment asserting the compromise. Mrs. Brown declared in an affidavit that by signing the compromise, she did not intend to release a future wrongful death claim.
The Supreme Court held that the compromise did not encompass the wrongful death claim. The court cited the "basic distinction between the tort victim's personal injury action and his or her beneficiaries' wrongful death action," noting that at the time of the compromise, the jurisprudence prohibited survivors from settling a wrongful death claim until the victim had died. 630 So.2d at 752. Though finding that the release neither generally nor specifically mentioned the potential wrongful death action, the court declined to adopt "an express waiver requirement." Rather, it looked to the "factual and legal circumstances surrounding the execution of the release instrument" to determine *664 whether the parties intended to resolve a future wrongful death action. The court utilized the "substantiating evidence" to reach its conclusion.
In E.M. Nominee the plaintiffs, natural gas sellers, sued the purchaser, Arkla, for breach of contract covering production from a field in DeSoto Parish. In settlement negotiations, however, it transpired that Arkla wished to resolve all contract disputes with the plaintiffs. Arkla prepared a list of six contracts that it had entered with the plaintiffs. The parties then entered an agreement whereby Arkla made a lump sum recoupable payment and the plaintiffs waived "any and all claims relating to or arising out of the Contracts" included in the list. Four years earlier, however, one of the plaintiffs had acquired by assignment another contract (the "ENI contract") with Arkla; this one was not on the list. The plaintiffs later filed suit for declaratory judgment that the ENI contract was not resolved by the agreement. After a trial on the merits, the District Court found that the agreement was an "all claims" compromise, barring the plaintiffs' claim on the ENI contract.
On appeal, this court restated the principles of Brown v. Drillers Inc., supra, finding that extrinsic evidence was admissible to determine the parties' true intent in the ambiguous compromise. We found that on the evidence presentedespecially that Arkla had prepared the list of contracts the parties did not intend to resolve the ENI contract, which did not appear on the list.
The rationale of these cases is that in the event of ambiguity, the courts may utilize extrinsic "substantiating evidence" of the parties' true intent. Because the PSC has raised the issue of intent, we must consider the summary judgment evidence and determine whether it meets the criteria of Brown v. Drillers, supra. We find, however, that the determinative facts in Brown and E.M. Nominee are simply not present here: there no legal impediment to the settlement, nor is there an exclusive list of claims. The scope of each compromise will depend on the quality of the summary judgment evidence relative to the individual claim.

Particular issues of scope the PSC's contentions
By its second and third assignments, the PSC urges the District Court erred in dismissing the property damage and wage claims of plaintiffs in Category 2 and in placing two particular plaintiffs, Steven Rome and Harry Clark, in Category 1 instead of Category 2.
The initial contention, that the summary judgment is improper to dismiss any Category 2 claims for property damage, lacks merit. In Brown v. Drillers Inc., supra, the Supreme Court found the plaintiff could limit the scope of a release by presenting substantiating evidence that she was legally barred from compromising the claim and that neither side could have anticipated the claim at the time of the release. We have closely examined each of these files. Every one of the additional property claims now being advanced was a matter that the claimant should have known of at the time he or she executed the release. This evidence shows not a mutual lack of intent to compromise the entire claim, but the claimant's subsequent decision that his property damage was more extensive than he initially believed. Kelly v. Owens, supra; Robbert v. Carroll, supra. For these reasons the judgment will be affirmed insofar as it grants summary judgment dismissing the property claims of Category 2 claimants.
The PSC also advances several arguments contesting the dismissal of personal injury claims. One challenges GAB's authority to settle such claims. According to GAB's tracking sheets and check receipts, most of the plaintiffs who signed releases did not receive any payment for personal injury; those who received payment coded "bodily injury" actually received, in most cases, an amount equal to *665 their medical expenses. In deposition, Mr. LeBlanc stated that GAB lacked authority to settle the personal injury claims of minors without court approval,[7] and counsel for Angus conceded this at the hearing. Dep., 78; R.p. 490. Minors' claims were preserved in Category 3. Mr. LeBlanc also stated that GAB did not intend to settle personal injury claims with employees who were inside the gate when the explosion occurred, as these claims may be regulated by workers compensation and require the approval of the workers compensation judge.[8] Dep., 193-194. We find that these statements are legally correct and have not been factually contradicted by the summary judgment evidence. Given the lack of intent, inside the gate claimants did not release their personal injury or compensation claims; they must be placed in Category 2. The judgment will be clarified with respect to Category 2 to reflect that its members did not compromise their personal injury or worker's compensation claims.
Moreover, we find that three inside the gate claimants were placed in Category 1, effectively dismissing their entire claims. These are Harry Lee Clark, Stephen Rome and Clyde Smith. The judgment will be amended to move these claimants to Category 2.
The PSC further argues that because GAB lacked authority to settle the personal injury claims of minors and inside the gate employees, it also lacked authority to settle all personal injury claims. However, the summary judgment evidence is clear that GAB had the authority, and Angus and IMC had the intent, to settle personal injury claims with everyone other than inside the gate employees. For these reasons we cannot state, as a matter of law, that all the releases should be limited in scope to exclude future personal injury claims.
The PSC next argues that according to Mr. LeBlanc, GAB had the authority to "disregard" the releases, reopen cases and make additional payments, all of which is inconsistent with the finality of the release and suggests that there was no intent for the releases to be truly final. Such conduct with a few claimants, the PSC urges, negates the finality of all the releases. Cutrer v. Illinois Central Gulf R. Co., supra. We find very few post-release payments, and nothing to suggest a pattern of disregarding the finality of the releases. Instead we find that any individual claimant who signed more than one "final" release and received more than one "final" payment, has presented substantiating evidence of a lack of intent to make the release truly final.

Particular issuesAngus's contentions
Angus argues that a lack of substantiating evidence justifies the summary judgment as to all 121 members of Category 1 and warrants granting summary judgment as to 54 members of Categories 2 and 4 (including one claimant omitted from the judgment). For the reasons already discussed, however, Angus and IMC did not intend, and GAB lacked the authority, to settle bodily injury or workers compensation claims of inside the gate employees. We therefore affirm, with the clarification mentioned previously, the judgment with respect to the claimants placed in Category 2 by the District Court.[9]
As for the other claimants, we find that the mere assertion, by affidavit or in deposition, that he or she did not intend to settle any particular claim is conclusory; without more, it does not create a genuine issue that the scope of the compromise is *666 limited. See Dumas v. Angus Chemical Co., supra; Thompson v. South Central Bell Tel Co., supra. Summary judgment is therefore affirmed with respect to these claimants, or 118 plaintiffs included in Category 1 by the District Court.
By contrast, a few claimants provided summary judgment evidence that created genuine issues of material fact. For example, Barbara Bancroft and Horace and Irma Price received multiple payments and signed multiple releases, thus creating an issue as to the finality of the release. Tammy Brown, Johnny Dunn Sr.,[10] B.J. Moses[11] and Pearl Gray showed that they sustained an actual physical or emotional injury in the explosion yet received only a small amount for actual property damage; this creates a genuine issue whether the parties intended to compromise all claims. Moak v. American Auto. Ins. Co., supra. Millie Atkins showed, by handwritten addendum to her affidavit and by GAB records, that the $438 she received was for automotive damage only, thus creating an issue as to personal injury and other special damages. For these reasons, the judgment will be affirmed denying summary judgment with respect to these eight claimants.
Summary judgment must be granted, however, with respect to two Category 4 claimants. Percy Brown signed a release on July 8, over two months after the explosion. He received $244, which GAB coded as property damage. His proof of claim form, filed by the PSC, denies that he was physically injured, as does a handwritten note signed by him; he alleges in the proof of claim that he inhaled fumes, but he describes no symptoms and sought no medical attention. He also alleges fear and fright. In short, he has offered no summary judgment evidence of injury or any other claim beyond those for which he was already compensated. There is no showing that both parties lacked the intent to settle all his claims.
Margaret Lorraine Dupree (listed on the judgment as Barbara Dupree) signed a partial release on May 21, 1991 and received $451.91; later, on October 3, she signed a final release, acknowledging receipt of $851.91 total. In the summary judgment evidence is a handwritten recap of her expenses, totaling $366.91, a receipt for a cash advance of $85.00. Her proof of claim states that she was in Haile, Louisiana at the time of the explosion and that she inhaled gas. She alleges irritation, nervousness, anxiety, anger and depression as a result of the explosion, but offers no explanation why she did not or could not know of these conditions by the time she signed the final release over five months after the explosion. In short, there is no summary judgment evidence that meets the criteria of Brown v. Drillers Inc., supra.
Summary judgment is granted with respect to Percy Brown and Margaret Lorraine Dupree. It is deniedand the judgment is affirmedwith respect to the other Category 4 claimants challenged by Angus.

The Other defendants
By its fourth assignment the PSC urges the District Court erred in granting full or partial dismissal of claims against all defendants other than Angus and IMC. It first argues that the release was a contract between the individual claimant and Angus and/or IMC, and that parties not privy to the compromise may not claim its benefits. In support the PSC cites La. C.C. art. 3077, City of Shreveport v. Plaisance, 559 So.2d 944 (La.App. 2 Cir.), writ denied 564 So.2d 324 (1990), and McCall v. Cameron Offshore Boats Inc., 93-787 (La. App. 3 Cir. 3/9/94), 635 So.2d 263. These cases, however, involved compromises which made no mention of any third parties. *667 The compromise may confer benefits to parties mentioned therein. Keith v. Comco Ins. Co., 574 So.2d 1270 (La.App. 2 Cir.), writ denied 577 So.2d 16 (1991); Louisiana Farm Bureau Mut. Ins. Co. v. Thompson, 98-0520 (La.10/20/98), 719 So.2d 427.
The PSC's second argument, advanced by reply brief, is that the attempted assignment of rights in the release is ineffectual; the right to recover for personal injuries is strictly personal and cannot be the basis of a judgment in favor of the assignee. In support it cites Ducote v. Commercial Union Ins. Co., 92-431 (La. App. 3 Cir. 4/7/93), 616 So.2d 1366, writ denied 93-1232 (La.7/1/93), 620 So.2d 877, and Constans v. Choctaw Transp., Inc., 97-0863 (La.App. 4 Cir. 12/31/97), 712 So.2d 885, writ denied 98-0408 (La.3/27/98), 716 So.2d 892.
Glitsch Inc. concedes these general principles of law but argues that both Ducote and Constans found that the plaintiffs had legally subrogated their personal injury actions under La. C.C. art. 1829. It also argues that neither of these cases involved plaintiffs who wished to rescind their compromises because they had improperly assigned personal injury claims and, indeed, no reported case has granted a plaintiff's motion to do so.
Subrogation takes place by operation of law in favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment. La. C.C. art. 1829(3). Legal subrogation occurs when the settlement pays the obligee's entire debtnot just the paying obligor's portionand when the paying obligor brings an action against the others as a result of payment. Ducote v. Commercial Union, supra at 1370; La. C.C. art. 1829, Revision Comment (c). For reasons already discussed, we are convinced that members of Categories 1 and 3 received full payment for their bodily injury claims. However, the summary judgment evidence before us does not show that Angus and IMC have actually brought an action against Glitsch Inc. and the other defendants who have sought summary judgment, listed in Footnote 3. For this reason we are constrained to hold that these defendants are not entitled to summary judgment with respect to the claimants in Categories 1 and 3. The judgment will be amended accordingly.

Conclusion
For the reasons expressed, the judgment is amended as follows:
(1) The summary judgment dismissing all claims of HARRY LEE CLARK, STEPHEN ROME and CLYDE SMITH is amended to a partial summary judgment, dismissing these plaintiffs' claims except for personal injury or worker's compensation (changing them to Category 2).
(2) The denial of summary judgment as to PERCY BROWN and MARGARET DUPREE (whose name appears on the judgment as "Barbara Lorie Dupree") is reversed (changing them to Category 1).
(3) Summary judgment is denied with respect to plaintiff JOHNNY DUNN SR. (adding him to Category 4).
(4) Summary judgment as to claimants in Category 1, and as to adult claimants in Category 3, is amended to reflect that all property and wage claims are dismissed as to all defendants, and all personal injury claims are dismissed as to Angus Chemical Company and IMC Fertilizer.
(5) Summary judgment as to claimants in Category 2 is clarified to state that these claims are dismissed except for personal injury or worker's compensation claims.
The judgment is in all other respects affirmed. Costs of appeal are assessed in the same proportion as in the District Court.
JUDGMENT AMENDED, AFFIRMED AND CLARIFIED.
NOTES
[1] Dumas v. Angus Chemical Co., 25,632 (La. App. 2 Cir. 3/30/94), 635 So.2d 446, writ denied 94-1120 (La.6/24/94), 640 So.2d 1349. There we noted that 245 lawsuits were filed by 694 individual claimants who did not execute releases.
[2] See, e.g., Dumas v. Angus Chemical Co., 31,400 (La.App. 2 Cir. 1/11/99), 728 So.2d 441 (affirming summary judgment dismissing 267 "inside the gate" claimants with claims of loss of consortium and emotional distress); Dumas v. Angus Chemical Co., 31,399 (La. App. 2 Cir. 1/13/99), 729 So.2d 624 (dismissing all claims against a fire safety contractor, Grinnell Corp.); Dumas v. Angus Chemical Co., 31,398 (La.App. 2 Cir. 12/9/98), 728 So.2d 434 (dismissing exemplary damage claims against the designer of the storage tank, Glitsch Inc.).
[3] These included Glitsch, Teledyne, Robinson Contractors, IMC Global, Breck Construction Co., Enpro Services, Cooper Industries, Ford, Bacon & Davis, and their respective insurers.
[4] Several affidavits were not actually signed by the claimants.
[5] Nine of these claimants were included in Category 4; the tenth was omitted from the judgment altogether, amounting to denial of summary judgment as to him.
[6] Fed.R.Civ.P. 56(c); see also, Mark Tatum & William Norris III, Summary Judgment and Partial Judgment in Louisiana: The State We're In, 59 La. L.Rev. 131 (1998); cf. David W. Robertson, Summary Judgment and Burden of Proof: Effects of the 1996 Amendment, 45 La. Bar. J. 331, 332 (1997).
[7] La. C.C.P. arts. 4265, 4271, 4272.
[8] La. R.S. 23:1271, 1271.
[9] One Category 2 claimant, Buster Madison Parker, was not an inside the gate employee; Angus urges that he should be placed in Category 1. However, at the hearing, counsel for Angus specifically requested partial summary judgment with respect to Parker's property damage claims only. R.p. 1026.
[10] Johnny Dunn Sr.'s name was omitted from the judgment; presumably summary judgment was denied with respect to him.
[11] B.J. Moses was also an inside the gate employee.