EDITH H. JONES, Chief Judge,
Concurring in Part and Dissenting in Part:
I concur in the vacatur of the contempt judgment against Aguiluz, because I believe that he pursued his action in Louisiana state court in an attempt to do no more than compel Bayhi not to pay him but to pay Sallie Mae her undischarged share of the couple’s student loan debt. In asserting that novel claim, Aguiluz did not intentionally violate his ex-wife’s discharge order and should not be subject to civil contempt for violation of the 11 U.S.C. § 524(a) discharge injunction.
I dissent, however, from the holding that the state court judgment must be reinstated. It is an end run around Bayhi’s discharge for Aguiluz to seek to compel her to pay Sallie Mae. The only consequence of the state court judgment is to relieve Aguiluz of the threat he would otherwise face that Sallie Mae will come after him (rather than Bayhi) because of his co-liability on the debt. The action effected a de facto partition of the Sallie Mae liability from his standpoint. Had Aguiluz sought this relief from his ex-wife during her bankruptcy, it would have been a “claim” that might well have been discharged. I say “might” because this is a novel situation.
What is not novel here is that Aguiluz was required to appear in the bankruptcy court to assert his claim. The term “claim” is defined as broadly as possible by the Bankruptcy Code, to effectuate the *411 broadest possible relief for the debtor. See Matter of Southmark Corp., 88 F.3d 311, 316-17 (5th Cir.1996); 11 U.S.C. § 101(5).[1] Moreover, the Bankruptcy Code explicitly deals with claims for contribution among co-debtors. See 11 U.S.C. § 502(a). Whether it ultimately proved to be contingent or matured, allowed, disallowed, or nondischargeable, however, Aguiluz had a “claim” against his wife’s bankruptcy estate, and he was required to pursue that claim in bankruptcy court. Because he did not pursue it, the claim is barred.
The majority reason that because the underlying debt is for a nondischargeable student loan, Aguiluz could ignore the bankruptcy case, refuse to file a proof of claim, and seek his independent post-bankruptcy declaratory judgment in state court. He could thus assume the status of the student loan agency — Sallie Mae— both as to nondischargeability of his contribution claim and as to the fact that Sallie Mae need not file a proof of claim. 11 U.S.C. § 523(a)(8).
The first proposition is dubious on this record; the second is wrong.
First, the record is curiously silent as to whether, and how much, Aguiluz may have paid on his ex-wife’s share of the Sallie Mae debt. The majority assumes he has been paying her share, see footnote 30, but there is no substantiation in the record or in Aguiluz’s pleadings and briefs for their speculation. Yet actual payment by the co-debtor is the prerequisite for any contribution claim in or out of bankruptcy.[2] Aguiluz’s claim cannot functionally assume Sallie Mae’s status if he has made no payments on Bayhi’s behalf.[3]
*412 Second, there is no support for the majority’s conclusion that Aguiluz could bypass bankruptcy court in making his contribution claim against Bayhi. In In re Fields, 926 F.2d 501 (5th Cir.1991), this court ruled on a nondischargeability contest arising between the debtor and a surety who had fully paid the debtor’s state liquor taxes. The surety was indeed sub-rogated to the nondischargeability of the state tax, but it filed a complaint in bankruptcy court to assure its status. All of the cases Fields cites followed the same procedure. See id. at 504, n. 8.
Bankruptcy courts have jurisdiction to determine all “claims” against the debtor. They must decide the status of contribution claims in order to prevent double recovery against a debtor’s estate and because such claims, like any others, may be subject to defenses or limitations asserta-ble by the debtor. Aguiluz appeared in the bankruptcy case, but he filed neither a proof of claim nor a complaint to determine the nondischargeability of his contribution claim against Bayhi. Had the claim been simply contingent at the time, it might well have been subject to disallowance, because the Code discharges a debt- or from such obligations. 11 U.S.C. § 502(e)(1)(B).[4] Whether, in this case, some consequence of Louisiana law or the nondischargeability of the underlying debt would alter the substantive outcome are novel questions. But these questions go to the nature of a contribution claim between the debtor and a co-debtor. They existed at the date of bankruptcy; they are within the bankruptcy court’s jurisdiction; and they could and should have been litigated there initially. Because Aguiluz neither asserted his claim nor received a deelaration of its nondischargeability, he forfeited it. Aguiluz’s later state court action interfered with Bayhi’s discharge, and its judgment should be vacated.
The majority would wipe out bankruptcy court jurisdiction on the theory that Agui-luz holds a special position as the co-debtor on a nondischargeable debt. My point is that no matter what position Sallie Mae holds by statute vis-á-vis the bankruptcy, a contribution claim runs only between co-debtors. In subrogation, by contrast, the co-debtor steps formally into the shoes, and accedes to the rights and remedies, of the creditor. The majority disavows reliance on subrogation (or “reimbursement”) in favor of calling this a contribution claim. But treating it as such, nothing in the comprehensive scope of bankruptcy jurisdiction authorizes Aguiluz to refrain from asserting his claim for contribution against Bayhi in bankruptcy court.
Unfortunately, the majority err not only in analyzing the “contribution” claim but even more fundamentally, in understanding what claim Aguiluz makes. He nowhere purports to litigate a contribution claim. Instead, when Aguiluz describes his right, he calls it a right of “subrogation.” I assume he means what he says, and his actual claim dooms the majority’s approach. In bankruptcy, a creditor who is a co-debtor may assert a claim for contribution or subrogation, but not both. 11 U.S.C. § 509(b)(1). As a subrogation claim, Aguiluz’s assertion would fail under bankruptcy law and many states’ law because he “received consideration for the claim held by the creditor.” 11 U.S.C. § 509(b)(2). As the majority concede, Aguiluz benefitted from the community *413 student loan. Moreover, a subrogation claim would not have been allowed unless Aguiluz fully paid the Sallie Mae debt. In re Fields is thus substantively (as well as proeedurally) distinguishable because the surety there had paid the full liquor tax and had clearly received no prior benefit from the creditor.[5]
The majority’s analysis and result, in short, condone a clever avoidance of the broad scope of bankruptcy court jurisdiction and amount to a complete re-lawyer-ing of the case in favor of Aguiluz. Agui-luz had a chance to seek a remedy in bankruptcy court; Bayhi has had no chance to respond to the majority’s views.[6] The majority worries about Aguiluz’s financial condition, but we have no basis to assess the ultimate equities without any evidence that Aguiluz has had to pay any of his wife’s share of the student loan debt.
The better result in this case would be to vacate the state court judgment, dismiss the contempt citation, and pretermit the majority’s gratuitous and hitherto unliti-gated primer on Louisiana law and procedure.
I respectfully dissent.

. 11 U.S.C. § 101(5) states:
(5) The term "claim” means—
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

. For all its insistence that "Louisiana-brand” contribution is owed ab initio, the majority cite no authority that supports this proposition. This is because the authority indicates quite the reverse: payment of a co-debtor's share is a pre-requisite for contribution in Louisiana. See, e.g., Cole v. Celotex Corp., 599 So.2d 1058, 1072 (La.1992) ("The cause of action for contribution will not accrue or mature, however, until payment of an excess of the virile portion.”); Scott v. Behrman, 273 So.2d 661, 665 (La.Ct.App.1973) (no contribution where claimants had not paid "the whole debt,” nor more than their share) (citing predecessor to La. Civ.Code. Ann. art. 1804); see also La. Civ.Code Ann. art. 1804 ("A solidary obligor who has rendered the whole performance ... may claim from the other other obligors no more than the virile portion of each.”) (emphasis added).
The Fifth Circuit has already recognized this as the law in Louisiana: "[Plaintiffs] may claim contribution from [Defendants] only if their payment ... may in some way discharge part of [Defendant's] potential liability.” Diggs v. Hood, 772 F.2d 190, 194 (5th Cir.1985) (citing La. Civ.Code Ann. art. 1804); see also id. at 197 ("The right to contribution exists only in favor of a party who has paid what someone else owes.”)

.The majority's attempt to skirt this basic requirement by characterizing this as a matter of “legal subrogation” is likewise unavailing. Legal subrogation in Louisiana requires an actual payment of the co-obligor’s debt: "Legal subrogation occurs when the settlement pays the obligee’s entire debt — not just the paying obligor’s portion — and when the paying obligor brings an action against the others as a result of payment.” Dumas v. Angus Chemical Co., 742 So.2d 655, 667 (La.Ct.App.1999) (emphasis added). “Subrogation takes place by operation of law in favor of an obligor who pays a debt he owes with others or for others and who has a recourse *412 against those others as a result of the payment.” La. Civ.Code Ann. art 1829(3).

. The majority apparently agree that if the state court judgment were founded, as the bankruptcy court believed, on the divorcing spouses' agreement, it would have been a dischargeable claim in bankruptcy.

. The majority respond at length to my invocation of the Bankruptcy Code provision limiting subrogation claims. 11 U.S.C. § 509(b) and (b)(2). I raised this provision because Aguiluz describes his claim as one for subro-gation — and only subrogation. Further, I note that the majority’s citation of a case in which an ex-wife recovered, as a subrogee of the IRS, against her ex-husband, the debtor, was a dispute litigated in bankruptcy court. See Cooper v. Cooper (In re Cooper), 83 B.R. 544 (Bankr.C.D.Ill.1988). This proves my point: Bankruptcy court is the proper forum even for the litigation of allegedly non dis-chargeable claims for subrogation or contribution.

. Bayhi's inability to respond is particularly troubling in light of the majority’s muddled (to say the least) depiction of Louisiana law. See supra.