SUSAN M. CHEHARDY, Judge.
 

 |2On appeal, defendant seeks review of the trial court’s grant of plaintiffs motion to enforce a settlement agreement. For the following reasons, we affirm.
 

 Facts
 

 On April 20, 2006, Leonard Holmes (“Holmes”) signed a promissory note in favor of Hancock Bank of Louisiana (“Hancock”) for $257,500.00. As partial collateral for said note, Holmes pledged a certificate of deposit (“CD”) of approximately $141,000.00 that he had on deposit with Hancock.
 

 The signatory of the note promised payment in full upon lender’s demand, but, if no demand was made, payment was due on April 20, 2007. When the note matured, Holmes had not repaid the money. Thereafter, Hancock applied the pledged certificate of deposit, which had a balance of $141,377.31, to the outstanding amount Holmes owed on the note.
 

 On November 8, 2006, Hancock filed suit against Holmes in his domicile of St. Charles Parish. In its Petition, Hancock alleged that there remained an outstanding principal balance of $116,172.69, plus interest accrued through October 16, 2006 in the amount of $7,541.30, plus interest from October 17, 2006 [suntil paid at the rate of 8.75% per annum (per diem $29.85), plus late charges in the amount of $432.16, plus 25% attorney’s fees. Holmes denied the allegations of the lawsuit in his answer.
 
 *1133
 
 Trial of the matter was set for January 18, 2008.
 

 In December of 2007, however, the parties signed a document entitled “Receipt and Release Agreement.” That agreement, reads, in pertinent part:
 

 1) Leonard Holmes acknowledges the validity of the pi-omissory note sued upon herein and further acknowledges the balances as set forth herein as being ... due and owing unto Hancock Bank.
 

 2) Leonard agrees to waive any and all claims for breach of fiduciary duty ... against Hancock Bank resulting from the execution of this promissory note.
 

 3) In return for which, Hancock Bank agrees to accept $80,000.00 from Leonard Holmes which will be applied to the debt. The balance of the debt will be evidenced by a new promissory note executed by Leonard Holmes which note will bear interest at the rate of 8.75% per annum from date until paid. This note will be payable in full two years from execution of same. The note will be executed contemporaneously with the execution of the settlement agreement herein.
 

 4) In addition, in order to secure this note, Leonard Holmes agrees to execute an assignment of his LLC interest in Paradise Beach Resort, LLC....
 

 5) As a result, Hancock Bank hereby releases and acquits Leonard Holmes from any and all actions which it may have against Leonard Holmes, resulting form the execution of the original loan document herein, save for payment of the $80,000.00 referenced herein and execution of the new promissory note.
 

 6) The parties will cause ... a dismissal of the lawsuit to be filed immediately upon execution of this forbearance agreement....
 

 7) If ... Leonard Holmes fails to pay same, Holmes acknowledges that Hancock Bank may proceed to enforce this note through legal process. Leonard Holmes acknowledges that he will not be able to raise any of the defenses which he raised in this lawsuit referenced above in response to any action on the new note being contemplated herein.
 

 8) Each party hereto has had advice of counsel in reviewing this agreement.
 

 The agreement was signed by Holmes and a representative of Hancock Bank and duly witnessed and notarized. Holmes transferred $80,000.00 to Hancock Bank Lafter signing the agreement. Both parties agree that they did not sign the note or security agreement as contemplated by the agreement on that date.
 

 Some time later, someone at Hancock Bank noticed that neither the promissory note nor the assignment of Holmes’ membership interest in Paradise Beach Resort, LLC referenced in the settlement agreement had been executed. Hancock presented the note and assignment to Holmes but he refused to sign the documents.
 

 Thereafter, Hancock filed the underlying “Motion to Enforce Settlement Agreement.” At the hearing on that motion on September 29, 2009, Hancock introduced the settlement agreement into the record and asked that the judge order Holmes to comply with the terms of the settlement agreement. After hearing testimony and reviewing the evidence, the trial judge found that Holmes had intended to settle his case with Hancock because he had signed the release and receipt agreement and he had paid $80,000.00 to the bank. Thereafter, the trial judge ordered Holmes
 
 *1134
 
 to sign the note and security assignment referred to in the settlement agreement. Holmes appeals from that judgment.
 

 On appeal, Holmes assigns three errors: first, the trial judge erred in finding that a settlement was consummated between the parties; second, the trial judge erred in failing to allow Holmes to withdraw from the compromise when Hancock had not fulfilled its obligations for almost two years; and finally, the trial judge erred in finding that Hancock’s failure to take any actions and pending litigation over the security allows Holmes the right to reject the compromise. In response, Hancock counters that the parties entered a valid compromise pursuant to La. C.C. art. 3701 and C.C. art. 3702 and Holmes has not presented sufficient evidence, as required by statutory authority, to allow him
 
 to
 
 vacate this settlement agreement.
 

 I
 
 rJLUW
 

 Compromises are favored in the law, and the burden of proving the invalidity of such an agreement lies with the party attacking it.
 
 Rivett v. State Farm,
 
 508 So.2d 1356 (La.1987). At the time that the agreement was signed, La. C.C. art. 3071 provided, “A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.” Further, La. C.C. art. 3072 provided, “A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.”
 

 There are two essential elements of a compromise: (1) mutual intention of preventing or putting an end to litigation, and (2) reciprocal concessions of the parties to adjust their differences.
 
 Trahan v. Coca Cola Bottling Co.,
 
 04-0100 (La.3/2/05), 894 So.2d 1096. The parties’ intent in executing a compromise is normally discerned from the four corners of the document; extrinsic evidence is normally inadmissible to explain, expand or contradict the terms of the instrument.
 
 Brown v. Drillers Inc.,
 
 93-1019 (La.1/14/94), 630 So.2d 741. Nevertheless, when the parties to a compromise dispute its scope, they are permitted to raise factual issues regarding whether the unequivocal language of the instrument was intended to be truly unequivocal.
 
 Id.
 
 However, such latitude is granted only in the presence of some “substantiating evidence” of mistaken intent.
 
 Dimitri v. Dimitri,
 
 00-2641 (La.App. 4 Cir. 1/30/02), 809 So.2d 481, 485.
 

 In
 
 Brown v. Drillers Inc., supra,
 
 the Supreme Court held that “substantiating evidence” must establish: either (1) that the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not | ^intend to release certain aspects of his or her claim.
 
 Brown v. Drillers Inc., supra,
 
 630 So.2d at 749. In the absence of such evidence, the compromise is subject to the normal rules of contract analysis and enforced precisely as written.
 
 Id.
 

 The trial court’s interpretation of an alleged compromise agreement is subject to manifest error/clearly wrong review.
 
 Kelly v. Owens,
 
 29,613 (La.App. 2 Cir. 8/20/97), 698 So.2d 757,
 
 writ denied,
 
 97-2311 (La.12/12/97), 704 So.2d 1193;
 
 Doyal v. Pickett,
 
 25,247 (La.App. 2 Cir. 12/1/93), 628 So.2d 184. This is because the existence or validity of a compromise depends on a finding of the parties’ intent, an inherently factual finding.
 
 Kelly v. Owens, supra.
 
 For the reasons discussed
 
 *1135
 
 below, we find no error in the district court’s findings.
 

 Discussion
 

 In his first assignment of error, Holmes argues that the agreement was not consummated. He argues that the parties did not intend to be bound until the note and assignment were executed.
 

 Holmes attests that neither he nor his attorney received a promissory note or security agreement from Hancock after they signed the potential agreement, which led him to believe that the agreement was not final. Holmes also points out that Hancock has never filed the settlement agreement into the public record, and has never filed a Motion to Dismiss the lawsuit that is the subject of the compromise. Finally, Holmes’ former attorney, Kevin P. Klibert, testified that, to his knowledge, the settlement was never consummated. He contends that there is no enforceable agreement because neither the note nor the assignment were perfected.
 

 Hancock admits that they did not forward the promissory note or security agreement to Holmes until 2009. Hancock responds that the only essential elements of a compromise are a mutual intent to end the litigation and reciprocal concessions to adjust their differences are present in the underlying agreement.
 

 |7The trial judge found that Holmes and Hancock Bank intended to end the subject litigation by signing the agreement. The record reflects that Holmes admitted that he transferred $80,000.00 to Hancock Bank after signing the agreement. Further, Hancock benefited by receiving $80,000.00 towards Holmes’ outstanding obligation. Moreover, Holmes would benefit by having two more years to repay the remaining debt. Additionally, Hancock would benefit by receiving an assignment of Holmes’ interest in the Paradise Beach Resort LLC. Presumably, both parties would benefit from an end to the subject litigation by avoiding further litigation costs, including attorney fees and court costs.
 

 In our view, the trial judge did not err in finding that this exchange satisfied the two essential elements of the compromise: a mutual intent to end the litigation and reciprocal concessions.
 
 Trahan v. Coca Cola Bottling Co., supra.
 
 This assignment lacks merit.
 

 In his second and third assignments of error, Holmes contends that trial judge erred in failing to allow Holmes to withdraw from the compromise or to reject the compromise because Hancock had not fulfilled its ‘obligations’ for almost two years. We disagree.
 

 A compromise instrument is the law between the parties.
 
 Trahan v. Coca Cola Bottling Co., supra.
 
 Furthermore, a compromise carries the authority of things adjudged, and cannot be attacked for error of law or lesion. La. C.C. art. 3078. A compromise may be rescinded whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded where there exists fraud or violence. La. C.C. art. 3079. The party seeking rescission of a settlement agreement bears the burden of proving its invalidity.
 
 Hoover v. Boucvalt,
 
 99-0867 (La. App. 4 Cir. 11/24/99), 747 So.2d 1227,
 
 writ denied,
 
 99-3610 (La.2/18/00) 754 So.2d 969.
 

 IsThe trial judge found that Holmes failed to meet his burden to prove that the December 2007 agreement was invalid. We cannot say that the district court was clearly wrong in its finding. For the foregoing, reasons, the trial court’s ruling is affirmed. Costs of this appeal are taxed against appellant.
 

 AFFIRMED.