ROBERT A. CHAISSON, Judge.
12In this automobile repair suit, David Scheuermann, Jr. appeals a judgment enforcing a settlement agreement and dismissing his suit against Cadillac of Me-tairie and GMAC Service Agreement Corporation (GMAC). For the following reasons, we affirm the judgment.
FACTS AND PROCEDURAL HISTORY
Mr. Scheuermann bought a Cadillac automobile from Cadillac of Metairie in 2001, and bought a service warranty for it from GMAC in 2005. The service agreement was valid until September 29, 2008, or until the vehicle reached 83,025 miles, whichever occurred first. On August 8, 2008, shortly before the service warranty was due to expire, Mr. Scheuermann brought the car to Cadillac of Metairie with complaints of a “knocking” sound in the engine. Cadillac of Metairie made repairs to the vehicle; however, Mr. Scheuermann noted that the |3“knocking” noise was still present and again complained. By the time that the vehicle was returned to Mr. Scheuermann, the warranty had expired. When the dispute could not be resolved amicably, Mr. Scheuermann filed suit against Cadillac of Metairie and GMAC.
As the result of settlement negotiations, GMAC agreed to pay for a replacement engine to be installed in Mr. Scheuer-mann’s vehicle in exchange for dismissal from the suit of both GMAC and Cadillac of Metairie. A letter setting forth this agreement was sent to Michael A. Britt, Mr. Scheuermann’s counsel, and stated as follows:
Dear Mike:
This will confirm that under the warranty Mr. Scheuermann purchased, we will have the engine fixed at Best Chevrolet and we expect a signed release dismissing all defendants including the warranty company, GMAC Service Agreement Corporation, who was never named??
We also agree that the only consideration for settlement for General Motors, GMAC Service Agreement Corporation and the dealership, Cadillac of Metairie, Inc. is that we will reimburse the dealership where Mr. Scheuermann wants his vehicle fixed, which is Best Chevrolet, for all repairs that he is complaining about that relates to the lawsuit.
I would like this acknowledgment to be signed before the vehicle goes to Best Chevrolet for repairs and upon completion of the repairs that your client will sign a release releasing all defendants and sign a motion to dismiss dismissing all complaints.
Furthermore, as all contractual obligations to pay for repairs have now expired, if Mr. Scheuermann should have any more problems that relate to this repair this cause of action will be with Best Chevrolet which I assume will give him some kind of warranty on parts and labor.
If you are in agreement with the above, would you please sign the bottom of this letter and fax it back to me so we can set up the repairs for this Thursday or Friday.
As noted, according to the warranty agreement, I think Mr. Scheuermann gets a rental for at least five days, and I will have that |4set up at Best Chevrolet so when he brings in his vehicle for the repairs, he can have a rental.
With best regards, I remain Very truly yours, s/Stephen Elliott
*1062 Michael Britt signed the letter, but added a hand-written addendum which stated that “[d]ismissal of case will be done after repairs completed by Best Chevrolet.”[1]
After Best Chevrolet replaced the engine in Mr. Scheuermann’s vehicle, counsel for defendants requested that Mr. Scheuermann comply with the settlement agreement and dismiss Cadillac of Metair-ie and GMAC from the suit. Mr. Scheuer-mann, claiming that the engine was still not operating properly, refused to dismiss these defendants. He further asserted that the “after repairs completed” language in the hand-written addendum was understood by him to mean “after repairs completed successfully.” Because he claimed that the repairs were not successful, there was, in his opinion, no valid agreement to dismiss the defendants.
GMAC and Cadillac of Metairie urged a motion to enforce the settlement agreement and dismiss the suit. The trial judge, finding that the defendants had complied with the settlement agreement, dismissed the suit as to GMAC and Cadillac of Metairie.[2] This appeal followed.[3]
LAW AND DISCUSSION
The only issue on appeal is whether the trial court was correct in finding that the defendants complied with the settlement agreement and therefore were entitled to a dismissal of the lawsuit against them. The rules pertaining to compromises are contained in La. C.C. arts. 3071-3083. Article 3071 defines a compromise as a contract whereby the parties settle a dispute or uncertainty concerning an |sobligation or other legal relationship. Article 3072 provides that a compromise shall be made in writing, or recited in open court so that it may be reduced to writing. Article 3080 precludes any subsequent action on the claim.
In Hancock Bank of Louisiana v. Holmes, 09-1094 (La.App. 5 Cir. 5/25/10), 40 So.3d 1131, 1134, this Court summarized the law applicable to compromises as follows:
There are two essential elements of a compromise: (1) mutual intention of preventing or putting an end to litigation, and (2) reciprocal concessions of the parties to adjust their differences. Trahan v. Coca Cola Bottling Co., 04-0100 (La.3/2/05), 894 So.2d 1096. The parties’ intent in executing a compromise is normally discerned from the four corners of the document; extrinsic evidence is normally inadmissible to explain, expand or contradict the terms of the instrument. Brown v. Drillers Inc., 93-1019 (La.1/14/94), 630 So.2d 741. Nevertheless, when the parties to a compromise dispute its scope, they are permitted to raise factual issues regarding whether the unequivocal language of the instrument was intended to be truly unequivocal. Id. However, such latitude is granted only in the presence of some “substantiating evidence” of mistaken intent. Dimitri v. Dimitri, 00-2641 (La.App. 4 Cir. 1/30/02), 809 So.2d 481, 485.
In Brown v. Drillers Inc., supra, the Supreme Court held that “substantiating evidence” must establish: either (1) that *1063 the releasor was mistaken as to what he or she was signing, even though fraud was not present; or (2) that the releasor did not fully understand the nature of the rights being released or that the releasor did not intend to release certain aspects of his or her claim. Brown v. Drillers Inc., supra, 630 So.2d at 749. In the absence of such evidence, the compromise is subject to the normal rules of contract analysis and enforced precisely as written. Id.
The trial court’s interpretation of an alleged compromise agreement is subject to manifest error/clearly wrong review. Kelly v. Owens, 29,613 (La.App. 2 Cir. 8/20/97), 698 So.2d 757, writ denied, 97-2311 (La.12/12/97), 704 So.2d 1193; Doyal v. Pickett, 25,247 (La.App. 2 Cir. 12/1/93), 628 So.2d 184. This is because the existence or validity of a compromise depends on a finding of the parties’ in: tent, an inherently factual finding.
In the present case, Mr. Scheuermann’s attorney signed a document which on its face can have no other interpretation than that it was meant to settle the dispute between the parties. The agreement required GMAC to pay to “have the |fiengine fixed at Best Chevrolet.” Although the letter agreement does not specifically state that the vehicle’s engine was to be replaced, all parties agree that replacement of the engine was the “repair” that GMAC agreed to pay for. Moreover, the agreement specifies that any problems which occurred after the repairs by Best Chevrolet, ie., after the replacement engine was installed, because of either parts or labor, would be the responsibility of Best Chevrolet. The addendum merely confirms that the release would not be forthcoming until the repairs were completed by Best Chevrolet.
Mr. Scheuermann filed an affidavit stating basically that his understanding was that the release would only be made if the repairs were completed satisfactorily, and therefore that his consent to the agreement as interpreted by the defendants was lacking. In effect, Mr. Scheuermann argues that the replacement engine had to function properly before the defendants would be released from any further repair obligations. In order for this Court to accept Mr. Scheuermann’s interpretation of the agreement, we would have to read into the agreement the word “properly”, or “satisfactorily”, terms that are simply not present in the agreement or the handwritten addendum. Furthermore, Mr. Scheuermann’s interpretation would completely negate the provisions of the agreement that provided that after the repairs were made by Best Chevrolet, should he experience any more problems that relate to the repair, his cause of action would be with Best Chevrolet. We do not find this to be a reasonable interpretation of the settlement agreement. Nothing in the service warranty required GMAC to resolve Mr. Scheuermann’s complaints by providing him with a complete replacement engine. In compromise of this litigation, GMAC agreed to provide Mr. Scheuer-mann with a complete replacement engine in exchange for a release from any further repair obligations and a dismissal from this lawsuit. In the context of a complete replacement of the 17engine as opposed to an attempted repair of the existing engine, it is completely reasonable that GMAC would require, as part of any compromise agreement, a release from responsibility from any further repair obligations, with Mr. Scheuermann limited to pursuing any claims for problems occurring with the replacement engine against Best Chevrolet.
In his reasons for judgment, the trial judge noted that the addendum did not add additional conditions to the settlement *1064 agreement, but rather merely clarified when the release would be tendered. It is clear that the trial judge found that GMAC’s obligation under the settlement agreement was to pay to have the replacement engine installed in Mr. Scheuer-mann’s vehicle, after which GMAC and Cadillac of Metairie would be released from the lawsuit and Mr. Scheuermann would be limited to pursuing any further repair claims regarding the replacement engine, if there were any, against Best Chevrolet. We find no manifest error in this factual determination on the record before us. We therefore agree with the determination by the trial judge that the compromise agreement was binding, and hereby affirm his judgment dismissing this suit as to GMAC and Cadillac of Metairie.
For the foregoing reasons, the judgment is affirmed.

AFFIRMED

. Although the letter agreement does not specifically state that the vehicle's engine was to be replaced, the parties do not dispute that replacement of the engine was the "repair” that GMAC agreed to pay for.

. The suit is still pending in the district court as to other defendants.

.This case was previously before this Court on appeal, but it was remanded to the district court because the settlement agreement had not been properly placed in evidence.