FRANK J. D'AMICO, JR.

VERSUS

JAMIE LYNN BURNTHORNE WIFE OF
FRANK J. D'AMICO, JR.

NO. 21-CA-671

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 707-665, DIVISION "A"
HONORABLE RAYMOND S. STEIB, JR., JUDGE PRESIDING

August 25, 2022

**JUNE B. DARENSBURG**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
John J. Molaison, Jr., and June B. Darensburg

**<u>AFFIRMED</u>**
 **JBD**
 **MEJ**
 **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
FRANK J. D'AMICO, JR. AND THE LAW OFFICE OF FRANK J. D'AMICO,
JR., APLC
        Charles R. Jones
        Michael A. McNulty, Jr.

COUNSEL FOR DEFENDANT/APPELLEE,
JAMIE D'AMICO
        Harry C. Cabral

**DARENSBURG, J.**

Appellant Frank J. D'Amico, Jr. ("Mr. D'Amico") appeals the trial court's June 22, 2021 judgment dismissing his petition for nullity of the October 25, 2012 consent judgment entered into with his ex-wife, Jamie Lynn Burnthorne ("Ms. D'Amico"). For the reasons discussed below, we affirm the trial court's judgment.

**Facts and Procedural History**

On October 25, 2012, the trial court granted Mr. and Ms. D'Amico a divorce. They entered into "Consent Judgment of Final Partition of Joint Assets and Liabilities" ("consent judgment"). The consent judgment was signed by both parties, their attorneys, and the trial court on October 25, 2012. In that consent judgment, the parties stated that they desired to settle all claims regarding all jointly and separately owned immovable properties. The property at issue on appeal is Unit 110, Grand Dunes, a condominium located in Florida. The consent judgment is eighteen pages long, approximately five of which pertain to Unit 110 in pertinent part as follows:

****

3.) Jamie Burnthorne D'Amico shall receive one hundred percent (100%) of all rights, title and interest in and to and Frank J. D'Amico, Jr. gifts unto Jamie Burnthorne D'Amico one hundred percent (100%) of all rights, title and interest possessed by him in and to the following immovable property, as well as all movables and contents located therein, receipt of which is hereby acknowledged by Jamie Burnthorne D'Amico. Said immovable property being more particularly described, as follows:

Unit 110, Grand Dunes, a Condominium, according to the Declaration of Condominium thereof recorded in Official Records Book 2746, Page 3006, and as amended in the Official Records Book 2747, Page 327, all of the Public Records of Walton County, Florida, together with an undivided interest in the common elements, if any appurtenant thereto, subject to and in accordance with the covenants, conditions, restrictions, terms and other provisions of said Declaration.

****

Frank J. D'Amico, Jr., shall convey his interests in Unit 110 to Jamie Burnthorne D'Amico by written Warranty Deed and any documentary

1

stamp taxes required for its recordation in Walton County Florida shall be paid by Jamie Burnthorne D'Amico. The deed to this Unit shall be delivered by Frank J. D'Amico, Jr. to Jamie Burnthorne D'Amico, within five days of the date of the entry of this Consent Judgment. This transfer shall be subject to all liens and encumbrances on said Unit including, but not limited to , a certain mortgage indebtedness in favor of Regions Bank and an EssentialLine [sic] Home Equity Line of Credit, Account No. ending xxxx, and having, as of October 11, 2012, an approximate outstanding principal balance of EIGHT HUNDRED THIRTY NINE THOUSAND EIGHTY ONE AND 68/100 DOLLARS ($839,081.68); which loan is secured by a mortgage encumbering Unit 110 recorded at Official Records Book 2761, Page 3664, of the Public Records of Walton County, Florida (hereinafter the "Unit 110 Mortgage"). The parties hereto expressly acknowledge that the Unit 110 Mortgage is comprised of two separate borrowings, or types of borrowings, which the parties describe as follows:

a. "Credit Line Borrowing" in the current principal balance of FOUR HUNDRED TWENTY EIGHT THOUSAND THIRTY SIX AND 90/100 DOLLARS ($428,036.90); and

b. "Mortgage Borrowing" in the current principal balance of THREE HUNDRED NINETY EIGHT THOUSAND FOUR HUNDRED EIGHTY FIVE AND 16/100 DOLLARS ($398,485.16)

For as long as the Mortgage Borrowing portion of the Unit 110 Mortgage is outstanding and remains unpaid, Jamie Burnthorne D'Amico hereby covenants to, and shall, pay the Mortgage Borrowing in a timely manner by submitting her payments, which are currently in the amount of FOUR THOUSAND TWO HUNDRED SEVENTY SEVEN AND 24/100 DOLLARS ($4,277.24) per month, directly to Regions Bank on or before the eleventh (11th) day of each month.

For as long as the Credit Line Borrowing portion of the Unit 110 Mortgage is outstanding and remains unpaid, Frank J. D'Amico, Jr., individually and Frank J. D'Amico, Jr., APLC, hereby covenants to and shall pay the Credit Line Borrowing by remitting his/their payment to Regions Bank on or before the eleventh (11th) day of each month, hereinafter, as has been customarily done in the past.

With regard to these reciprocal covenants for the payment of the specified amounts of the Unit 110 Mortgage, the parties agree and stipulate to the following terms and remedies in the event of a default by either of the parties:

a. In the event that Frank J. D'Amico, Jr., individually and/or Frank J. D'Amico, Jr., APLC, defaults in his/their payment obligations of the Credit Line Borrowing, or in the event that Regions Bank accelerates the Unit 110 Mortgage based upon any cause other than Jamie Burnthorne D'Amico's default in her payment of the Mortgage Borrowing as stated above, Frank J. D'Amico, Jr., individually and/or Frank J. D'Amico, Jr., APLC, shall pay off the Credit Line Borrowing

2

to complete discharge, or cure any default thereunder, prior to the initiation of any foreclosure by Regions Bank of the Credit Line Borrowing Mortgage or other security agreements, and if Frank J. D'Amico, Jr., individually, and/or Frank J. D'Amico, Jr., APLC shall fail to timely do so, Jamie Burnthorne D'Amico may, at her option, pay off the Credit Line Borrowing to complete discharge or cure any default thereunder, and any monies advanced by Jamie Burnthorne D'Amico for such purposes shall be the personal obligation and debt of both Frank J. D'Amico, Jr. and/or Frank J. D'Amico, Jr., APLC owed to Jamie Burnthorne D'Amico; which obligation shall be collectible by suit or other remedy and which obligation shall bear interest until paid at the highest rate allowed under applicable law.

b.  In the event Jamie Burnthorne D'Amico defaults on her payment of the Mortgage Borrowing for a period of more than thirty (30) consecutive days following written notice from Frank J. D'Amico, Jr. (the "Notice of Default") that she is in default of those obligations without curing that default, Jamie Burnthorne D'Amico shall re-convey her interest in Unit 110 to Frank J. D'Amico, Jr. by Warranty Deed upon receipt of payment from Frank J. D'Amico, Jr.'s of an amount equal to the aggregate of all monies that Jamie Burnthorne D'Amico had paid to preserve, operate and maintain Unit 110 including, but not limited to, taxes, insurance, condominium assessments, and all payments she made toward the Mortgage Borrowing during the period of time from the date of September 11, 2010 through the date of her delivery of the Deed re-conveying Unit 110 to Frank J. D'Amico, Jr.  That re-conveyance shall occur within thirty (30) days following the opportunity to cure deadline set forth in the Notice of Default.  Frank J. D'Amico, Jr. shall be solely responsible to pay all documentary stamp taxes required to record this deed to reconveyance in Walton County Florida.

c.  Jamie Burnthorne D'Amico shall be free, at any time, to sell Unit 110 for any purchase price, and upon such terms, as she shall, in her sole discretion, determine are appropriate.  Upon any such sale, the Unit 110 Mortgage shall be paid in full.  With regard to the payoff of the Unit 110 Mortgage, Frank J. D'Amico, Jr., individually and/or Frank J. D'Amico, Jr., APLC shall be responsible for paying all monies owed under the Credit Line Borrowing indebtedness.

d.  Each party agrees that the other party shall be entitled to an interest deduction for the pro-rata amount of the total interest paid by each party, respectively.  This provision shall be effective with the calendar year, 2011, and each and every year thereafter, as applicable.  The parties further agree and acknowledge that in the event either party is required to enforce this provision against the other by way of legal action, they shall have the right to assert a claim for actual attorney's fees and costs by them in the event the court should grant the amount of relief requested[.]

On May 13, 2019, Ms. D'Amico filed "Rule for Contempt, For Past Due

Child Support, To Compel Payment of Funds Owed in Accordance with Consent

3

Judgment of Final Partition of Joint Assets and Liabilities, For Legal Interest, Attorney's Fees and Costs" ("rule to compel payment").

In her rule to compel payment, Ms. D'Amico asserted that she sold the Unit 110 condominium and that all indebtedness bearing against this property was paid in full by her, including all sums due and owing by Mr. D'Amico. She further asserted that she had made demand upon Mr. D'Amico for the portion of the mortgage indebtedness bearing against Unit 110 but that Mr. D'Amico had failed and/or refused to pay her any sums owed to her in accordance with the specific terms and conditions in the consent judgment. Ms. D'Amico requested that Mr. D'Amico be found in contempt of court for his willful failure to abide by the trial court's orders and that there be judgment in favor of her for monies owed by Mr. D'Amico representing the mortgage indebtedness, including but not limited to principal and interest in accordance with the consent judgment. She also requested that the sums be made absolute and executory up to and including the time of trial and payable immediately to her. Ms. D'Amico further requested that Mr. D'Amico be cast for her attorney's fees in the bringing of this rule plus all costs in connection with the filing of the rule and legal interest on all sums past due and owing.

On June 5, 2019, Mr. D'Amico filed "Dilatory Exceptions of Vagueness and Ambiguity, Unauthorized Use of Summary Proceedings and Nonconformity; and Peremptory Exception of No Cause of Action with Incorporated Memorandum in Support" ("exceptions"). In that pleading, Mr. D'Amico asserted that the rule to compel was vague, ambiguous, and failed to conform to pleading requirements. On August 12, 2019, the domestic commissioner overruled Mr. D'Amico's exceptions to Ms. D'Amico's rule to compel payment after a hearing. The written judgment was signed on September 9, 2019.

4

On September 25, 2019, Mr. D'Amico filed "Affirmative Defenses and Reconventional Demand." In that pleading, Mr. D'Amico argued, *inter alia*, that the consent judgment was an absolute nullity as it contained provisions and created obligations on him that were indefinite, uncertain, and dependent upon an uncertain future event including but not limited to provisions related to Unit 110. On February 17, 2021, Mr. D'Amico filed "First Amended Affirmative Defenses and Reconventional Demand," wherein he moved to change the name of his affirmative defenses pleading to "Affirmative Defenses to Rule for Contempt and Petition for Nullity of Judgment; Revocation and Dissolution of Donations; and for Damages" ("petition for nullity").

On June 22, 2021, a hearing was held on the petition for nullity. Counsel for Mr. and Ms. D'Amico presented their arguments; however, no witnesses testified, and no exhibits were admitted into evidence. After hearing arguments of counsel, the trial court denied Mr. D'Amico's petition for nullity of the October 25, 2012 consent judgment, stating:

> Okay. I'm going to deny the action of absolute nullity. The Court finds that they participated in the judgment. They received service of the judgment. They acquiesced in making payments under the consent judgment for a long period of time. There's no allegations of fraud being made on behalf of Mr. D'Amico. For fraud, he would have only had one year within which to bring this.

Mr. D'Amico objected and orally noticed his intent to seek supervisory review. The trial judge gave Mr. D'Amico thirty days to take a writ. On July 13, 2021, the trial judge reduced his ruling to a written judgment. On July 19, 2021, Mr. D'Amico filed a notice of intent to file a writ. The trial court designated the July 13, 2021 judgment as a final judgment on July 21, 2021. Mr. D'Amico filed a writ application in this Court on July 22, 2021, challenging the ruling denying the petition for nullity. On July 23, 2021, Mr. D'Amico filed a motion for appeal that was granted on July 28, 2021. On September 27, 2021, this Court denied Mr.

5

D'Amico's writ, stating that it declined to exercise its supervisory jurisdiction. *Frank J. D'Amico, Jr. v. Jamie Lynn Burnthorne, Wife of Frank J. D'Amico, Jr.*, 21-C-503 (La. App. 5 Cir. 9/27/21) (unpublished writ disposition).

This appeal followed. In his brief, Mr. D'Amico argues that the trial court erred by denying his petition for nullity. In a subsequent supplemental brief, Mr. D'Amico notified this Court that he had recently filed an exception of lack of subject matter jurisdiction in the trial court. He argued that neither the trial court nor this Court has subject matter jurisdiction over the ruling in the instant case.

**Standard of Review**

The trial court's interpretation of an alleged compromise agreement is subject to manifest error/clearly wrong review. *Hancock Bank of Louisiana v. Holmes*, 09-1094 (La. App. 5 Cir. 5/25/10), 40 So.3d 1131, 1134-35. This is because the existence or validity of a compromise depends on a finding of the parties' intent, an inherently factual finding. *Id.* On appeal, we review the trial court's findings of fact under the manifest error standard. *Martin v. Trushyna*, 19-79 (La. App. 5 Cir. 11/13/19), 283 So.3d 1083, 1086.

To reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis for the trial court's finding does not exist, and that the record establishes that the finding is clearly wrong. *Rabalais v. Nash*, 06-999 (La. 3/9/07), 952 So.2d 653, 657. The manifest error standard of review also applies to mixed questions of law and fact. *Martin*, 283 So.3d at 1086. When an issue is a strictly legal question, the *de novo* standard of review is used. *Id.*

**Assignment of Error Number One**

In his first assignment of error, Mr. D'Amico argues that the trial court erred in finding the October 25, 2012 consent judgment to be a valid judgment. Alternatively, he argues that the trial court erred in finding the consent judgment to be an enforceable contract.

6

First, Mr. D'Amico contends that the consent judgment contains twenty-four "in the event of" contingencies. Mr. D'Amico asserts that in order to be valid and enforceable, Louisiana law requires that judgments be precise, definite, and certain. He maintains that a judgment that is contingent on a future event is indeterminate and not a valid, final judgment.

Second, Mr. D'Amico states that while Ms. D'Amico's rule to compel payment was filed on May 13, 2019, the alleged amount owed under this judgment was not known to the mover until February 17, 2021. He argues that it is impossible to look at the judgment and determine what, if anything, is owed. Mr. D'Amico asserts that Louisiana law instructs that where a judgment requires the payment of money, the amount payable also must be stated in the judgment with certainty and precision without reference to an extrinsic source.

Third, Mr. D'Amico argues that the consent judgment contains provisions that are impermissible as a judgment. He notes that the consent judgment allows Ms. D'Amico to sell a condominium at her discretion at which time Mr. D'Amico would be required to pay the mortgage in full. Mr. D'Amico contends that this provision clearly defies the requirement that a judgment be definite, precise, and determined, as well as that it not be contingent upon future events, especially where a future event is wholly within the whim of Ms. D'Amico to control. Additionally, he argues that his monetary obligation under this provision cannot be determined without reference to extrinsic evidence. As such, Mr. D'Amico maintains that this provision, along with others like it contained in the consent judgment, render the consent judgment invalid as a matter of law and on the face of the consent judgment itself.

Alternatively, Mr. D'Amico argues that the trial court erred in finding the consent judgment to be an enforceable contract because many of its provisions are against public policy, illegal, fraudulent, and indicative of bad faith. Mr. D'Amico

7

asserts that these provisions include, but are not limited to: 1) the scheme to conceal the transfer of Unit 110 from the mortgage holder to prevent acceleration and vesting only Ms. D'Amico with the power to record the transfer in the public records of Walton County; and 2) Ms. D'Amico's power to keep mortgages open on the public record even though paid out for estate planning or personal liability purposes. Mr. D'Amico argues that these uncertainties are indicative of the open-endedness of this consent judgment and demonstrate why the judgment is an absolute nullity under Louisiana law. For these reasons, Mr. D'Amico argues that the lower court's judgment should be reversed.

Ms. D'Amico responds that the trial court was correct in dismissing Mr. D'Amico's petition for nullity of the consent judgment. She further responds that the consent judgment, which the parties entered into in order to fully and finally partition their joint assets and liabilities post-divorce, is clear and specific as to the distribution of the assets and liabilities and as to the rights and obligations of both parties. Ms. D'Amico argues that the enforcement of the consent judgment does not require extrinsic evidence nor does it contain an indefinite provision. She explains that as a result of the consent judgment, many of the assets were transferred to each party and sold by each party, including all immovable property in Florida. Ms. D'Amico maintains that this further ratified the consent judgment, which she argues was valid, enforceable, and relied upon by each party. She asserts that the trial court correctly dismissed the petition for nullity and that the judgment of the trial court should be affirmed.

The October 25, 2012 consent judgment entered into by the parties is a compromise or a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. La. C.C. art. 3071. The compromise instrument is governed by the same general rules of construction applicable to contracts. *Ortego v. State,*

8

*Dept. of Transp. and Dev.*, 96-1322 (La. 2/25/97), 689 So.2d 1358, 1363. A compromise is the law between the parties and must be interpreted according to the parties' intent. *Chauvin v. Exxon Mobil Corp.*, 14-808 (La. 12/9/14), 158 So.3d 761, 766. When the words of a compromise are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. C.C. art. 2046; *131 Beverly Knoll, LLC v. Clipper Constr., LLC*, 18-486 (La. App. 5 Cir. 5/15/19), 273 So.3d 1243, 1249.

Contracts have the effect of law for the parties and may only be dissolved through the consent of the parties or on grounds provided by law. La. C.C. art. 1983; *Rumore v. Wamstad*, 99-557 (La. App. 5 Cir. 2/8/00), 751 So.2d 452, 455. A compromise may be rescinded for error, fraud, and other grounds for the annulment of contracts. La. C.C. art. 3082. Such grounds include contracts wherein the cause of an obligation is unlawful such that the enforcement of the obligation would produce a result prohibited by law or against public policy. La. C.C. art. 1968; *Kozina v. Zeagler*, 94-413 (La. App. 5 Cir. 11/29/94), 646 So.2d 1217, 1220. When a contract violates a rule of public order, such as when the object of the contract is illicit or immoral, the contract is absolutely null and may not be confirmed. La. C.C. art. 2030. Where the consent to a contract has been vitiated by error, fraud, or duress, such a vice of consent renders a contract a relative nullity. La. C.C. art. 2031; *Hawkins v. Willow Inc.*, 15-71 (La. App. 5 Cir. 11/19/15), 181 So.3d 210, 217, *writ denied*, 15-2326 (La. 2/19/16), 187 So.3d 463.

A party who asserts that an obligation is null must prove the facts or acts giving rise to the nullity, modification, or extinction. La. C.C. art. 1831. Compromises are favored in the law, and the burden of proving the invalidity of such an agreement lies with the party attacking it. *Hancock Bank of Louisiana v. Holmes*, 09-1094 (La. App. 5 Cir. 5/25/10), 40 So.3d 1131, 1134 (citing *Rivett v. State Farm*, 508 So.2d 1356 (La. 1987)).

9

In *Daigle v. Daigle*, 06-346 (La. App. 3 Cir. 9/27/06), 940 So.2d 891, *writ denied*, 06-2914 (La. 2/16/07), 949 So.2d 418, Ms. Crittendon Daigle sought to enforce a partition of community property agreement, and Mr. Daigle filed a petition to annul it based on lesion beyond moiety. The trial court dismissed the petition to annul. On appeal, the third circuit found that a provision in the agreement was an absolute nullity as it violated a rule of public order and was, therefore, unenforceable. The appellate court noted that the provision involved Mr. Daigle paying permanent periodic spousal support regardless of fault, need, or ability to pay, in violation of the intent of the legislature in the promulgation of several civil code articles. The remainder of the agreement was affirmed.

In *Beebe v. Larche*, 50,267 (La. App. 2 Cir. 11/18/15), 184 So.3d 729, 737-38, *writ denied*, 16-249 (La. 4/4/16), 190 So.3d 1207, Mr. Eikert, Ms. Beebe's employer, contended that the consent judgment in question was void for lack of definiteness and/or internal contradictions. Mr. Eikert pointed out that the judgment was in favor of Ms. Beebe and against Mr. Larche, the owner of the building, but that Ms. Beebe was prohibited from attempting to collect the judgment. He also argued that the consent judgment did not appear to be for a certain sum because it was for $40,000 plus "any and all damages and court costs." The appellate court found that the consent judgment was a valid judgment, that it did not suffer procedural deficiencies, and that it was not void for lack of definiteness or internal contradictions. It also noted that Mr. Eikert did not present any arguments that the consent judgment should be invalidated for unilateral error as to a fact.

Mr. D'Amico cites several cases to support his position that the consent judgment is invalid because it is indefinite, uncertain, and based on contingencies. These cases include *Barfield v. St. Tammany Holding Co.*, 16-1420 (La. App. 1 Cir. 6/2/17), 2017 WL 2399020 (unpublished opinion); *Sibley v. Sibley*, 14-45 (La.

10

App. 1 Cir. 9/19/14), 2014 WL 4667577 (unpublished opinion); *State v. Fumar*, 05-2459 (La. App. 1 Cir. 11/3/06), 2006 WL 3108327 (unpublished opinion); and *Crefasi v. Crefasi*, 628 So.2d 1274 (La. App. 3 Cir. 1993).

In *Barfield*, which involved a tax collection suit, the first circuit concluded that the five rulings contained in the trial court's judgment were not final, appealable judgments over which it had appellate jurisdiction. Thus, it dismissed the appeal and remanded for further proceedings. The court in *Barfield* noted, *inter alia*, that the first ruling did not constitute a final judgment because it was indeterminate and based on a contingency, namely, that the exceptions of no cause of action were only granted if Tammany Holding Company (THC) was adjudged liable for additional taxes or charges on sales that THC made to Bertucci Contracting and Grillot Construction. Because THC had not yet been adjudged so liable on the Department of Revenue's main demand, the court in *Barfield* found that this ruling was not certain and was not a valid, final, appealable judgment over which it had jurisdiction.

In *Sibley*, Mr. and Ms. Sibley were divorced, after which a trial was held on an action to partition the community property. The trial court issued a judgment, and Ms. Sibley appealed. The first circuit found that the judgment's use of the language "in the event of default of this condition by Angela Sibley, Stacey Sibley shall be granted the full provisional ownership of the former community home" and "in the event that neither party successfully acquires full ownership by releasing the other party from any liability on the mortgage note of the former community home, the home shall be partitioned by licitation" was fatally defective. The first circuit found that the use of the phrase "in the event" was not precise, definite, or certain. Accordingly, the first circuit concluded that it was not a final appealable judgment, and it dismissed Ms. Sibley's appeal. However, the appellate court exercised its supervisory jurisdiction and addressed her writ application.

11

In *Fumar*, the trial court's judgment ordered the defendant to pay "child support in the amount of $600.00 ... per month ... effective at the time the custodial parent moves out of the home owned by defendant." The first circuit found that the judgment was based upon a contingency that made it unenforceable. Additionally, the appellate court noted that review of the record was required to determine the identity of the custodial parent. As such, the first circuit concluded that the judgment lacked certainty, rendering it invalid. The appellate court stated that in the absence of a valid final judgment, it lacked appellate jurisdiction to review the matter. However, it converted the appeal to a writ application and exercised its supervisory jurisdiction to review the assignment of error.

In *Crefasi*, the third circuit found that the original judgment, which was entered at the time of divorce, setting Mr. Crefasi's child support at 25% of his monthly income, was sufficiently uncertain and unjust to be ignored for purposes of the change in circumstances rule, so that the judgment on the subsequent rule setting child support at $450 per month could be properly viewed as an initial award establishing support, rather than as a change in support requiring a showing of a change of circumstances.

Ms. D'Amico responds that the cases cited by Mr. D'Amico do not support his argument in favor of his petition for nullity. She contends that *Barfield* and *Sibley* are cases that discuss whether a judgment is a final judgment for purposes of appellate versus supervisory jurisdiction. Ms. D'Amico argues that the first circuit in *Sibley* did not find that the phrase "in the event" invalidated the judgment, rather, she states that the court found that the judgment was not a final judgment for purposes of an appeal. She asserts that the first circuit in *Sibley* did not make any ruling nor did it state in *dicta* that the judgment Ms. Sibley was challenging on appeal was invalid because of the use of the phrase "in the event."

12

Ms. D'Amico also argues that *Crefasi* does not support Mr. D'Amico's position that the consent judgment is invalid. She maintains that *Crefasi* dealt with a trial court judgment which mandated that the father pay 25% of his income in child support without making a specific child support award as required by the child support statute. Ms. D'Amico asserts that *Crefasi* is not relevant to the consent judgment in the instant case which provides specific obligations in the partition of the parties jointly owned property. Ms. D'Amico further responds that *Fumar* dealt with an issue of child support where the court found that the court-ordered starting point of the child support obligation was too indeterminate. She asserts that in the instant case, the obligations of each party are very specific and determinate in the consent judgment.

In the instant case, Mr. and Ms. D'Amico, with the assistance of counsel, signed an extensive, eighteen-page consent judgment on October 25, 2012, wherein they partitioned their joint assets and liabilities. Approximately five pages involved the Unit 110 condominium located in Florida. The rights and obligations of each party regarding Unit 110 were set forth in great detail. Mr. D'Amico gifted his interest in Unit 110 to Ms. D'Amico. Mr. D'Amico agreed to pay the credit borrowing line, which had a balance at that time of $428,036.90, and Ms. D'Amico agreed to pay the mortgage borrowing, which had a balance at that time of $398,485.16. Mr. and Ms. D'Amico agreed that Ms. D'Amico would be free at any time to sell Unit 110 for any purchase price and upon such terms as she determined were appropriate. Upon any such sale, the Unit 110 mortgage would be paid in full, and Mr. D'Amico agreed to be responsible for paying all monies owed under the credit line borrowing indebtedness.

We find that the consent judgment is a valid, enforceable judgment. It is clear, definite, and specific regarding the distribution of assets and liabilities and the rights and obligations of Mr. and Ms. D'Amico. Mr. D'Amico signed the

13

consent judgment in 2012, agreeing to its contents. He has failed to establish that the enforcement of the obligations in the consent judgment would produce a result that is prohibited by law or is against public policy.

The cases relied upon by Mr. D'Amico in support of his position that the consent judgment is an invalid judgment are distinguishable from the instant case and, therefore, inapplicable. *Barfield*, *Sibley*, and *Fumar* are cases that discuss whether a judgment is a final judgment allowing an appeal to be taken rather than seeking writs, and *Crefasi* involved uncertain child support payments. Additionally, *Barfield*, *Sibley*, *Fumar*, and *Crefasi* all involve trial court judgments, whereas the instant case pertains to a consent judgment—a contract that Mr. and Ms. D'Amico entered into that was approved by the trial court. As such, these cases are not relevant to whether the consent judgment in the instant case is a valid, enforceable judgment.

For the foregoing reasons, we find that the trial court did not err by denying and dismissing the petition for nullity of the consent judgment.

**Assignment of Error Number Two**

In his supplemental brief, Mr. D'Amico argues that the trial court lacked subject matter jurisdiction to hear the rule to compel payment of funds because the parties set forth in the consent judgment that jurisdiction vests in Walton County, Florida. He further argues that this Court, likewise, does not have subject matter jurisdiction to review the judgment rendered by the trial court regarding the rule to compel payment of funds.

Ms. D'Amico responds that the basis of his exception is that a sole paragraph contained within the consent judgment provides that if Mr. D'Amico defaulted on any obligations under the consent judgment, jurisdiction and venue would be in the court of appropriate jurisdiction in Walton County, Florida. Ms. D'Amico argues that Mr. D'Amico misconstrues this provision in his attempt to

14

avoid his responsibilities under the express terms of the consent judgment. She states that the paragraph in question provides that in the event of Mr. D'Amico's breach or default as regards the then-existing credit line and/or mortgage indebtedness owned in conjunction with Unit 110, jurisdiction would be in the courts of Walton County, Florida.

Ms. D'Amico argues that she has never asserted that Mr. D'Amico was in default of the prior existing credit line and/or mortgage indebtedness previously owned on Unit 110. She notes that she has sold Unit 110 and paid off all indebtedness owed on the credit line and/or mortgage indebtedness bearing against Unit 110, including but not limited to all sums owed by Mr. D'Amico in conjunction therewith. Ms. D'Amico explains that Mr. D'Amico was fully aware of her intent and express sole legal authority to sell Unit 110 and that he, in fact, executed a "Durable Power of Attorney" on October 24, 2012, appointing Ms. D'Amico as his true and lawful "Attorney-In-Fact and/or Agent" to act in his stead concerning all matters related to Unit 110. Ms. D'Amico asserts that Mr. D'Amico did not honor the specific terms and conditions of the consent judgment and has refused to pay any monies owed to her. She maintains that jurisdiction and venue are properly before the trial court and this Court.

"Jurisdiction is the legal power and authority of a court to hear and determine an action or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled." La. C.C.P. art. 1. Subject matter jurisdiction "is the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted." La. C.C.P. art. 2. "The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties." La. C.C.P. art. 3. "A judgment rendered by a court which has no jurisdiction over the subject matter of the action or proceeding

15

is void." *Id.* Thus, the issue of subject matter jurisdiction addresses the court's authority to adjudicate the cause before it. *Wilkinson v. Parker*, 18-431 (La. App. 5 Cir. 12/27/18), 263 So.3d 987, 991 (citing *Boudreaux v. State Dep't of Transp. & Dev.*, 01-1329 (La. 2/26/02), 815 So.2d 7, 12-13). The exception of lack of subject matter jurisdiction is a question of law and is reviewed *de novo*. *Ryan Gootee Gen. Contractors, LLC v. Plaquemines Parish Sch. Bd. & One Constr. Inc.*, 15-325 (La. App. 5 Cir. 11/19/15), 180 So.3d 588, 595.

The provision at issue in the consent judgment is as follows:

> Jamie Burnthorne D'Amico and Frank J. D'Amico, Jr. expressly acknowledge that pursuant to the terms of the Unit 110 Mortgage, there is a possibility that the Mortgagee could terminate the Credit Line Borrowing and/or the Mortgage Borrowing and accelerate the balance due thereunder and foreclose the Unit 110 Mortgage under several circumstances, including, but not limited to, Frank J. D'Amico, Jr.'s assignment or conveyance of the Unit to Jamie Burnthorne D'Amico. The parties acknowledge that there is a possibility that this transfer of Unit 110 as a part of this Consent Judgment could be construed by the Mortgagee as a violation of the prohibition against assignment and conveyance of the Unit; thereby triggering the acceleration of the amounts due and possible foreclosure. In order to mitigate against that eventuality, Jamie Burnthorne D'Amico and Frank J. D'Amico, Jr. have agreed that the Deed conveying Unit 110 from Frank J. D'Amico, Jr. to Jamie Burnthorne D'Amico shall be executed and delivered to her, but will only be recorded in the Public Records of Walton County, Florida, upon the direction of Jamie Burnthorne D'Amico. Because of that option of non recordation, there is a possibility the Deed may not be recorded for a period of time and therefore would not constitute notice to bona fide purchasers and bona fide creditors under applicable Florida law. In order to protect and preserve, to the greatest extent that he can, the title of Jamie Burnthorne D'Amico in Unit 110, Frank J. D'Amico, Jr. does hereby covenant, for himself, his heirs, successors and assigns, that he will not do, or fail to do, anything which does or could create a lien or encumbrance upon the title of Unit 110 including, but not limited to: (1) any further conveyance or assignment of all or any portion of the title to Unit 110; any (2) further drawing down of any available credit line issued by Regions Bank, or any or any [sic] successor or assign thereof, which would increase the outstanding indebtedness owed under the Unit 110 Mortgage; and (3) he will not further encumber Unit 110; (4) or allow the creation of any lien or encumbrance against Unit 110, without Jamie Burnthorne D'Amico's written permission; and (5) will not assert any claim of ownership adverse to that of Jamie Burnthorne D'Amico. These covenants against further encumbrance or alienation shall run in perpetuity for so long as Jamie Burnthorne D'Amico owns Unit 110.

In the event that Frank J. D'Amico, Jr. breaches or defaults under these covenants prohibiting further conveyance or encumbrance of Unit 110, Jamie Burnthorne D'Amico shall be entitled to recover from Frank J. D'Amico, Jr. all of her damages, including her actual attorneys' fees and costs incurred in any such action and the parties agree that the jurisdiction and venue for any such action shall be in the Court of appropriate jurisdiction in and for Walton County, Florida; the parties hereby expressly waiving any contrary rights to venue that they might otherwise possess and expressly consenting to the jurisdiction of the Courts of Walton County, Florida, over their persons.

In the instant case, the eighteen-page consent judgment contains one paragraph regarding jurisdiction on pages seven and eight in the section pertaining to Unit 110. This provision in the consent judgment basically provides that in order to protect and preserve the title of Ms. D'Amico in Unit 110, Mr. D'Amico covenants that he will not do or fail to do anything which does or could create a lien or encumbrance upon the title of Unit 110 including, but not limited to: (1) any further conveyance or assignment of all or any portion of the title to Unit 110; (2) any further drawing down of any available credit line issued by Regions Bank, or any successor or assign thereof, which would increase the outstanding indebtedness owed under the Unit 110 Mortgage; and (3) he will not further encumber Unit 110; (4) he will not allow the creation of any lien or encumbrance against Unit 110, without Ms. D'Amico's written permission; and (5) he will not assert any claim of ownership adverse to that of Ms. D'Amico.

The consent judgment further provides that in the event Mr. D'Amico breaches or defaults under these covenants prohibiting further conveyance or encumbrance of Unit 110, Ms. D'Amico shall be entitled to recover from Mr. D'Amico all of her damages, including her actual attorneys' fees and costs incurred in any such action. Mr. and Ms. D'Amico also agreed that the jurisdiction and venue for any such action shall be in the court of appropriate jurisdiction in Walton County, Florida, waiving any contrary rights to venue that they might

17

otherwise possess and expressly consenting to the jurisdiction of the courts of Walton County, Florida, over their persons.

Mr. D'Amico has failed to show that he breached or defaulted under the five covenants listed above. Additionally, Ms. D'Amico has not asserted that Mr. D'Amico was in default of the prior-existing credit line or mortgage indebtedness on Unit 110. Rather, in her rule to compel payment of funds, Ms. D'Amico asserted that she sold the Unit 110 condominium and paid off all of the indebtedness, including Mr. D'Amico's portion. She thereafter made demand upon Mr. D'Amico to pay the funds owed to her in accordance with the consent judgment, which he has refused to do.

For the foregoing reasons, we find that jurisdiction is proper before the trial court and this Court.

**Conclusion**

Accordingly, we affirm the judgment of the trial court.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

.
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**AUGUST 25, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-671

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HON. RAYMOND S. STEIB, JR. (DISTRICT JUDGE)
CHARLES R. JONES (APPELLANT)       HARRY C. CABRAL (APPELLEE)       LESLIE A. BONIN (APPELLEE)

**MAILED**
MICHAEL A. MCNULTY, JR. (APPELLANT)
ATTORNEY AT LAW
4608 RYE STREET
METAIRIE, LA 70006